[Civ. No. 48118. Second Dist., Div. Two. Mar. 3, 1977.]

ROSEMARY QUEZADA et al., Plaintiffs and Appellants, v.
EDWARD P. HART et al., Defendants and Appellants.

**COUNSEL**

Rudolph Pearl for Plaintiffs and Appellants.

La Follette, Johnson & Schroeter, Daren T. Johnson and Edward L. Lascher for Defendants and Appellants.

## OPINION

FLEMING, J.—Appeal by defendants and cross-appeal by plaintiffs from a judgment for damages for legal malpractice. The two attorney defendants (Attorneys) stipulated to their negligence in not bringing plaintiffs' quiet title action (underlying action) to trial within five years, and the only issues litigated were whether plaintiffs would have prevailed in the underlying action, and if so, what they would have recovered. The trial court, sitting without a jury, found plaintiffs would have prevailed in the underlying action to quiet title against plaintiffs' elder brother, and entered judgment for plaintiffs for the value of the property they would have acquired, plus attorneys' fees and costs that plaintiffs incurred when their elder brother evicted them from the property after dismissal of the underlying action. The court refused to consider plaintiffs' claim for damages for emotional suffering as a result of the loss of the property. Defendants appeal the judgment, and plaintiffs cross-appeal the court's refusal to consider damages for emotional suffering.

The trial court found the underlying action between Raul Munoz and five of his younger brothers and sisters, plaintiffs herein, involved title to their family home, purchased in February 1956 after the father of the family had died. At that time plaintiffs were minors and Raul was just over 21. The widowed mother of the family, Julia Munoz (now deceased), had given Raul money consisting of her widow's Social Security benefits and Social Security benefits on account of her five minor children, with the request that he locate and purchase a home for the family. Raul located property consisting of two houses on a lot, the front house vacant and the rear house rented to a tenant. Julia and Raul orally agreed that title to the property should be taken in joint tenancy, so that if something happened to Raul, Julia would have a roof over her head; that after Julia's death the rear house would belong to Raul and the front house to Julia's younger children. The property was taken in the joint names of Julia and Raul Munoz; and thereafter the entire family lived in the front house. The family maintained a bureau drawer in which it put all income coming into the family—Raul's earnings, rent from the rear house, Julia's Social Security benefits for herself and her minor children, and the minor children's earnings from odd jobs. From these revenues various family members paid the family's living expenses, and Raul made the mortgage and property tax payments. Sometimes Raul demanded trust deed and tax payments from the family members,

ostensibly for the front house, but in fact for the entire property. In late 1959 or early 1960 the tenant vacated the rear house, and Raul commenced to live there with his own family while Julia and the younger children remained in the front house. Julia died in January 1964, and thereafter Raul, as surviving joint tenant, cleared title in himself to the entire property. However, plaintiffs continued to reside in the front house and made payments on property taxes and trust deeds on the property, relying on Raul's representations that the front house was theirs.

Raul first openly asserted a claim to the entire property in 1967, when plaintiff Martin Munoz attempted to discuss selling the property.

Plaintiffs then consulted Attorneys, who prepared and filed on their behalf a complaint to quiet title to the front house in favor of plaintiffs and against Raul. This action was dismissed five years later because of Attorneys' negligent lack of prosecution. Immediately following dismissal of the quiet title action, Raul successfully evicted plaintiffs by an action in ejectment, which plaintiffs unsuccessfully attempted to defend by filing a cross-complaint asserting an interest in the front house.[1] After their eviction, plaintiffs brought the present malpractice action against Attorneys, claiming damages in the underlying action for the loss of property worth $30,000 and damages for emotional distress as a result of the loss of their family home.

During the trial of the malpractice action, certain plaintiffs testified that the original understanding among Julia, Raul, and the minor children was that on Julia's death the minor children would receive title to the entire property, not merely the front house. At that point plaintiffs' counsel moved to amend the malpractice complaint to allege that Attorneys had been negligent in the underlying action, not only in failing to bring it to trial, but also in not demanding the entire property rather than merely the front house; counsel further requested an amendment to plead that if plaintiffs had successfully prosecuted the underlying action, they would have obtained title to the entire property. Because plaintiffs had claimed only the front house, both in the underlying action and in their cross-complaint to the ejectment action, the trial court was reluctant to permit the amendment, but ultimately it did so after counsel for Attorneys stated he did not need further time to prepare. At the end of

---

[1]Plaintiffs' cross-complaint in the ejectment action was held barred by the statute of limitations.

the trial the court found that the agreement among the family members was, as originally stated, for plaintiffs to receive the front house only; that the value of the entire property was $25,000 and of the front house $15,000. The court entered judgment for plaintiffs for $15,847, the value of the front house, plus attorneys' fees and costs in the ejectment action.

## I

Attorneys claim the trial court erred in allowing plaintiffs to recover judgment for the value of the front house when their amended complaint sought the value of the entire property. They also challenge the court's findings and conclusions of law that construed the family agreement as being, alternatively, either an express trust or a constructive trust.

Inconsistency in a trial court's findings is immaterial if substantial evidence supports the judgment on any theory. (See discussion in 4 Witkin, Cal. Procedure (2d ed.) Trial, § 345, p. 3146; *Martinez* v. *Martinez* (1953) 41 Cal.2d 704 [263 P.2d 617].) Only where findings essential to the judgment conflict on material issues and contradict undisputed evidence will a reviewing court reverse a judgment for inconsistent findings. (See *Stiefel* v. *McKee* (1969) 1 Cal.App.3d 263 [81 Cal.Rptr. 565].) The issue is whether the findings and the record support judgment for plaintiffs on any theory. (*Sears* v. *Rule* (1945) 27 Cal.2d 131, 140-141 [163 P.2d 443], cert. den., 328 U.S. 843 (1946) [90 L.Ed. 1617, 66 S.Ct. 1022]; *Seabury* v. *Costello* (1962) 209 Cal.App.2d 640, 646 [26 Cal.Rptr. 248].) We agree with Attorneys the record does not support a finding of express trust,[2] but the evidence is sufficient to support a finding of constructive trust. The court's alternative conclusion of law No. 2 states: "That Raul Munoz acquired title to the front portion of the property by fraud or mistake and therefore a constructive trust was created by operation of law, to avoid the unjust enrichment of Raul Munoz, . . . ."

Although Raul's promise to convey real property to his brothers and sisters was oral and thus within the statute of frauds, California courts enforce such a promise on a theory of constructive trust. (*Orella* v. *Johnson* (1952) 38 Cal.2d 693, 696-697 [242 P.2d 5]; *Day* v. *Greene* (1963) 59 Cal.2d 404, 410 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; see full discussion in *Steinberger* v. *Steinberger* (1943) 60 Cal.App.2d 116, 119-120 [140 P.2d 31].) The general rule has been to require a finding of

---

[2]An express oral trust in land would be unenforceable under the statute of frauds.

either (1) fraud, duress, or undue influence; (2) a confidential relationship violated by repudiation of the oral promise; or (3) a transfer in contemplation of death. (See Rest., Restitution (1937) § 183, pp. 737-738.) In this case, the mother-and-son relationship and entrustment by the mother to the son of the money, the negotiation, and the purchase provide ample evidence to sustain a finding of confidential relationship. (See, e.g., *Steinberger* v. *Steinberger, supra,* at p. 122; *Dieckmann* v. *Merkh* (1912) 20 Cal.App. 655, 660 [130 P. 27]; *Novak* v. *Novak* (1967) 249 Cal.App.2d 438 [57 Cal.Rptr. 564].) Further, a breach of agency can also be inferred, which would likewise support imposition of a constructive trust. (See *Stromerson* v. *Averill* (1943) 22 Cal.2d 808, 815 [141 P.2d 732]; see also, *Monica* v. *Pelicas* (1955) 131 Cal.App.2d 700, 703-704 [281 P.2d 269].) The essence of constructive trust in California is that one person has reposed trust and confidence in another and conveyed property or supplied the consideration therefor on the basis of an oral promise to hold the property in trust or reconvey it according to the conveyor's direction. (See *Lauricella* v. *Lauricella* (1911) 161 Cal. 61, 65 [118 P.2d 430].) Such a violation of trust supports a conclusion of unjust enrichment. (*Monica* v. *Pelicas, supra,* at p. 704; see also *Steinberger, supra,* at p. 122; and, *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 153 [119 Cal.Rptr. 245].) The findings that plaintiffs contributed to the trust deed and property tax payments in reliance on Raul's representations they would own the front house after Julia's death and that plaintiffs at that time were in possession of the property, also support the conclusion of constructive trust. (*Jose* v. *Pacific Tile & Porcelain Co.* (1967) 251 Cal.App.2d 141, 144-145 [58 Cal.Rptr. 880]; see also, *Adams* v. *Young* (1967) 255 Cal.App.2d 145, 156 [62 Cal.Rptr. 877].)

Finally, the court's finding that Julia Munoz intended to benefit all her children and not one of them alone is grounded in common sense and supported by the reasonable inference that a parent is presumed not to have intentionally disinherited any of her children. (Cf. Prob. Code, § 90, raising a similar inference in the case of children pretermitted in a will.) We conclude that the findings amply support a constructive trust in plaintiffs' favor on the front house. ■ Since the findings support the judgment on a tenable legal theory, the trial court's other conclusions of law may be disregarded. (*Seabury* v. *Costello, supra,* at p. 646; see also, *Martinez* v. *Martinez* (1953) 41 Cal.2d 704 [263 P.2d 617].)

■ Attorneys make much of the point that the court, after permitting plaintiffs to amend their complaint to claim the entire

property, awarded judgment for the value of the front house alone. But they do not show any prejudice suffered as a result of the alternate expansion and contraction of the scope of recovery. The virtually unanimous rule in California is that variance between pleading and proof does not constitute error where no prejudice is shown and no objection to evidence or motion for nonsuit has been made in the trial court. (See 3 Witkin, Cal. Procedure (2d ed.) Pleading § 1061, p. 2637; and cases collected therein; Code Civ. Proc., § 469; Witkin, *supra,* § 1057, pp. 2632-2633; *Dougherty* v. *California Kettleman, etc.* (1937) 9 Cal.2d 58, 85 [69 P.2d 155] [plaintiff suing for a 50 percent share in oil production profits based on joint venture theory permitted to amend to conform to proof showing a 5 percent royalty interest].) A change in the relief sought does not change the contract or the cause of action. (*Dougherty, supra.*) In *Livernois* v. *Brandt* (1964) 225 Cal.App.2d 301, 305 [37 Cal.Rptr. 279], cited by Attorneys, the reviewing court would not permit a judgment awarding respondents *more* than they had sought in their complaint and reduced the judgment of the trial court to conform to pleadings and proof. Here, plaintiffs received *less* than they asked for; and Attorneys show no prejudice resulting therefrom.

## II

■  We turn to plaintiffs' cross-appeal from the ruling that damages for emotional suffering are not recoverable in an action for an attorney's negligence. Civil Code section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Although the statute does not preclude damages for emotional suffering as a consequence of tortious conduct, California courts have limited emotional suffering damages to cases involving either physical impact and injury to plaintiff or intentional wrongdoing by defendant. Damages for emotional suffering are allowed when the tortfeasor's conduct, although negligent as a matter of law, contains elements of intentional malfeasance or bad faith. The more significant recent cases include *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470] [$200,000 verdict for emotional suffering by four plaintiffs as a result of title company's tortious breach of implied covenant of good faith and fair dealing in negligently issuing title report and later intentionally refusing to clear title]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], and *Gruenberg* v. *Aetna Ins. Co.* (1973) 9

Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032] [insurance company's tortious breach of implied covenant of good faith and fair dealing in refusing to settle claims]; *Kendall Yacht Corp.* v. *United California Bank* (1975) 50 Cal.App.3d 949 [123 Cal.Rptr. 848] [wrongful dishonor of a check causing emotional distress damages]; and *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844 [88 Cal.Rptr. 39] [negligent breach of bailor/bailee relationship in failing to return rings of known sentimental value thereby causing emotional suffering]; see also, *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328 [5 Cal.Rptr. 686, 353 P.2d 294] [tortious breach of contract for failure to supply water supports damages for plaintiff's emotional suffering in witnessing his wife's mental illness brought on by the breach]. Cases such as *Crisci* and *Gruenberg, supra,* however, involve bad faith and are therefore really intentional tort cases, and although *Jarchow, supra,* declared that negligent infliction of emotional distress was actionable, the case involved a willful refusal to take action to clear title. The jury in *Jarchow* found that the cause of plaintiffs' emotional distress was "defendant's negligence and bad faith" evidenced by "Transamerica's utter failure to provide a good title or to do anything to correct its errors . . ." (48 Cal.App.3d at p. 932.) The court emphasized that a material portion of the wrong done plaintiffs was "Transamerica's refusals to attempt to remove these encumbrances" which refusals "were acts of bad faith which breached the policy's implied covenant of good faith and fair dealing." (48 Cal.App.3d at p. 941.) Thus elements of breach of covenant of good faith and of affirmative refusal to perform obligations—elements which justified recovery in *Crisci* and *Gruenberg, supra*—were likewise present in *Jarchow.* To the extent that the court in *Jarchow* purported to extend the doctrine of the foregoing cases to allow recovery for emotional suffering damages in cases involving negligence without bad faith and without physical injury, the extension was unwarranted by California law, for all prior cases contain some element of intentional or affirmative wrongdoing by defendant. The requirements needed to justify damages for emotional distress are set out in the recent case of *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163 [136 Cal.Rptr. 275], in which the court denied recovery for emotional distress damages when as a result of the negligence of defendant contractors in removing part of plaintiff's roof and not promptly replacing it, plaintiff's furnishings, home, and personal effects suffered severe rain damage. The court, stating that "complete emotional tranquillity is seldom attainable in this world," held that damages for emotional distress without physical injuries are recoverable only in instances of intentional and unreasonable infliction of distress by means

of extreme and outrageous invasions of tranquillity. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216]; Rest.2d. Torts, § 46.)

An attorney malpractice action is basically a tort action premised on the attorney's negligence. (*Pete* v. *Henderson* (1954) 124 Cal.App.2d 487 [269 P.2d 78]; *Smith* v. *Lewis* (1975) 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589] (overruled on another point, *In re Marriage of Brown* (1976) 15 Cal.3d 838 at p. 851 [126 Cal.Rptr. 633, 544 P.2d 561].) At bench, the acts complained of involve no affirmative wrongdoing, but merely carelessness and inattention to duty by Attorneys. Under such circumstances recovery of emotional suffering damages is unwarranted.

The judgment is affirmed. Plaintiffs are awarded their costs.

Roth, P. J., and Beach, J., concurred.