[No. E007232. Fourth Dist., Div. Two. Oct. 4, 1990.]

CINDY BURGER, Plaintiff and Appellant, v.
GUY POND, Defendant and Respondent.

**COUNSEL**

Jack Hylton Clark for Plaintiff and Appellant.

Corbett & Steelman, Richard B. Specter and Erik B. Michelsen for Defendant and Respondent.

## Opinion

HOLLENHORST, Acting P. J.—This is an appeal from a summary judgment entered against Cindy Burger, plaintiff and appellant (plaintiff), on her seventh cause of action for negligent infliction of emotional distress[1] against defendant and respondent, Guy Pond (Pond). Plaintiff and her husband, Kenneth Burger, filed an action against Pond (and two other attorneys who eventually obtained dismissals) based upon Pond's alleged negligent handling of Kenneth's divorce from his first wife, Irene. In the complaint, plaintiff alleged that Pond knew, at the time Kenneth Burger retained him, that plaintiff and Kenneth Burger intended to marry and have children as soon as Kenneth Burger's first marriage was legally dissolved, and, as a result of the negligence of Pond, the dissolution of Kenneth Burger's first marriage was set aside after Kenneth and plaintiff had married and had a child together, causing plaintiff to suffer extreme emotional distress. In our view, the trial court correctly concluded, as a matter of law, that Pond, as Kenneth Burger's attorney, was not liable to plaintiff for alleged negligent performance of his professional duties. We shall affirm the judgment, accordingly.

### Summary of Trial Court Proceedings

The Burgers' complaint against Pond contained several causes of action, each based upon Pond's alleged negligent handling of Kenneth Burger's divorce from his first wife. Although Kenneth Burger was a named plaintiff in each cause of action, plaintiff was included, as against Pond, in only the fifth and seventh causes of action, only the latter of which, as noted previously, is pertinent here.

In the seventh cause of action, seeking emotional distress damages based upon Pond's purported negligence, plaintiff alleged that on May 23, 1981, Kenneth Burger retained Pond as his attorney at law "to dissolve his marriage to his wife, Irene T. Burger," that Pond accepted the employment and continued same until about July 1983. Additional pertinent allegations of the seventh cause of action include the following:

"39.  On or about May 23, 1981, through approximately July, 1983, plaintiff Kenneth Burger had an oral agreement with [Pond] . . . for legal services thereby creating a fiduciary and special relationship between the parties, and [Pond] . . . knew that plaintiffs Kenneth Burger and Cindy

---

[1] In accordance with Pond's motion, the trial court actually granted summary judgment, and judgment was entered against plaintiff, on both the fifth and seventh causes of action of plaintiff's complaint. Plaintiff appeals only from the judgment entered on the seventh cause of action. We limit our discussion accordingly.

Burger were planning a subsequent marriage to each other, on or about November, 1981, and they planned to have children as soon as . . . Kenneth Burger's marriage to Irene T. Burger was dissolved, and [Pond] . . . knew that plaintiffs would suffer humiliation, mental anguish, emotional and physical distress and other consequences to . . . Kenneth Burger's profession, if plaintiff's marriage to Irene T. Burger was not dissolved, and other consequences to plaintiff Cindy Burger's profession and reputation in the community.

"40. [Pond] knew, or should have known, that his failure to exercise due care in the performance of dissolving . . . Kenneth Burger's marriage to Irene T. Burger would cause plaintiffs, and each of them, severe emotional distress.

"41. That [Pond], with an outrageous and conscious disregard to his special relationship to plaintiffs, filed a Petition for Dissolution for . . . Kenneth Burger knowing that . . . Kenneth Burger did not meet the residency requirements, and knowing that the subsequent Judgment of Dissolution was invalid, and failing to remedy the dissolution proceedings by filing an amended Petition for Dissolution.

"42. As a proximate result of [Pond] negligently failing to remedy the Dissolution proceedings by filing an amended Petition for Dissolution as alleged above, plaintiff's Dissolution was set aside, plaintiff's subsequent marriage [to Cindy Burger] was invalid, plaintiff's child by Cindy Burger was not legitimate, plaintiff [Kenneth Burger] incurred substantial legal fees to both [Pond] and others attempting to dissolve his marriage to Irene T. Burger, and plaintiffs have suffered humiliation, mental anguish and emotional and physical distress, all to plaintiffs' damage in an amount to be proven at time of trial."

Pond brought a motion for summary judgment against plaintiff[2] asserting, as to the seventh cause of action, that Pond, as Kenneth Burger's attorney, did not owe any "duty" to plaintiff, who was not Pond's client,

---

[2] Pond also moved for summary adjudication of issues against Kenneth Burger on both the fifth and seventh causes of action for intentional and negligent infliction of emotional distress, respectively. As to the seventh cause of action, Pond asserted, in reliance on *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 [136 Cal.Rptr. 815], that emotional distress damages are not recoverable, as a matter of law, in a professional malpractice action against an attorney. The trial court granted Pond's motion and Burger petitioned this court, in case No. E007189, to issue a writ of mandate. We granted Burger's petition on the seventh cause of action only, distinguishing *Quezada* and questioning its continued validity in light of *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]. We issued a peremptory writ directing the trial court to enter a new order denying Pond's motion for summary adjudication on the seventh cause of action.

and, therefore, as a matter of law, plaintiff was precluded from recovering for Pond's alleged negligence. Additionally, Pond asserted that even if he owed a duty of due care to nonclient plaintiff, emotional distress damages are not recoverable, as a matter of law, in a legal malpractice action.

In support of his motion, Pond filed his declaration and apparently filed a separate statement of undisputed material facts.[3] Pond's showing to support the two contentions above noted evidently consisted of references to the above quoted paragraphs of plaintiff's complaint. Pond asserted that, as a matter of law, the allegations were insufficient to state a cause of action on behalf of plaintiff, and against him, resulting from his alleged professional negligence.

In her opposition to Pond's motion, plaintiff submitted portions of the transcripts of her deposition and that of Kenneth Burger to show that she had been present with Burger during some of Burger's meetings with Pond, although she had not asked Pond to act as her lawyer and Pond had not given her any legal advice. Plaintiff also "gave [Pond] a profile of Irene [Burger's first wife] as far as her being vindictive, not ever wanting to give [Burger] a divorce . . . ." Plaintiff testified that, "We really went out of our way—I would say especially me—to say how important it was for our lives that [Burger] was going to be able to get a divorce from Irene Burger, and Guy Pond seemed very confident that he could handle the case." Plaintiff did not dispute that she was not Pond's client.

Plaintiff argued that despite the lack of an attorney-client relationship with Pond, she was nevertheless entitled to recover for the emotional distress she suffered as the result of Pond's alleged negligence on the theory that she was an intended beneficiary of Pond's services to Kenneth Burger and that it was reasonably foreseeable that negligent service or advice to Burger could cause harm to her. The trial court concluded that plaintiff's argument was legally insufficient and granted Pond's motion on both the fifth and seventh causes of action. Summary judgment was entered against plaintiff, effectively dismissing the action as to her.

## DISCUSSION

In pursuing this appeal, plaintiff, as previously noted, challenges only the trial court's ruling with respect to the seventh cause of action for "negligent

---

[3] Pond's separate statement of undisputed material facts is not included in the record, although plaintiff designated that the statement be included in her "Notice of Designation of Clerk's Transcript on Appeal." Plaintiff's separate statement of disputed and undisputed material facts is included in the record. We assume, based on Pond's silence with respect to the omission of his separate statement, that plaintiff's statement accurately sets forth those facts which Pond asserted in the trial court were undisputed.

infliction of emotional distress." Plaintiff contends, in reliance on *Molien* v. *Kaiser Foundation Hospitals, supra*, 27 Cal.3d 916, that as a result of her "direct contact" with Pond, as above noted, a "special relationship" existed, such that it was reasonably foreseeable that Pond's alleged negligence would result in harm to plaintiff, thereby creating a duty of care in Pond toward plaintiff. Pond, on the other hand, asserts, as he did in the trial court, that he owes no duty to plaintiff, who was not his client, but even if he did, emotional distress damages are not recoverable.

This appeal presents issues of law, not fact. Likewise, Pond's motion in the trial court did not depend on the resolution of disputed factual showings by the respective parties, but rather, whether, based on the facts alleged in plaintiff's complaint, plaintiff stated a sufficient basis for recovery of emotional distress damages against Pond.[4] ■ In our view, the precise issue presented, as delineated by the specific factual allegations of plaintiff's complaint, is whether Pond, having been retained by Kenneth Burger to obtain a divorce for Burger from his first wife, and allegedly knowing that Burger intended to marry plaintiff and have a child with her as soon as the divorce was obtained, owed a duty of care to plaintiff. We conclude that an attorney's liability for professional negligence extends to third party nonclients only under certain limited circumstances, not present here. Because we conclude that no basis for liability exists, we will not address plaintiff's second contention regarding the recovery of emotional distress damages.

Plaintiff asserts that the issue of Pond's duty is resolved, and in her favor, by the Supreme Court in *Molien* v. *Kaiser Foundation Hospitals, supra*, 27 Cal.3d 916, where the court, stressing the foreseeability of the risk, concluded that a husband could recover from his wife's doctor for the emotional distress the husband suffered as the result of the doctor's incorrectly diagnosing the wife as having syphilis, on the rationale that the husband was a "direct victim" of the doctor's negligence.[5] According to plaintiff, the facts

---

[4] In this regard, although Pond's declaration did attempt to negate elements of plaintiff's cause of action, particularly the allegations regarding Pond's "knowledge" that Kenneth Burger intended to marry plaintiff as soon as his divorce was final and Pond's negligence in handling Kenneth Burger's divorce, plaintiff submitted counterdeclarations which created triable issues of material fact as to each of these elements. Additionally, Pond's moving papers solely addressed the legal questions of whether an attorney owes a "duty" to nonclient third parties, and if so, whether breach of that duty permits recovery of emotional distress damages. The legal issues were the only basis upon which the trial court could have granted Pond's motion. Consequently, we will not address the standard issues presented in a typical appeal from a summary judgment because those issues are not present here.

[5] Plaintiff also asserts that resolution of this issue is governed by the doctrine of the law of the case. According to plaintiff, our earlier determination in Kenneth Burger's writ proceeding that *Molien* overset *Quezada* with respect to recovery of emotional distress damages resulting from an attorney's alleged professional negligence, is binding on the issue of whether plaintiff may also recover such damages from Pond. Plaintiff's assertion begs the question of

here are more compelling than those in *Molien* because she, unlike Molien, was actually present and had direct contact with the allegedly negligent defendant. Pond, consistent with his assertion that an attorney's liability for professional negligence depends entirely upon the existence of an attorney-client relationship, argues that *Molien* is factually distinguishable because it does not involve an attorney, and further, has been limited by more recent Supreme Court decisions.

We are of the view that resolution of the issue of Pond's "duty" to plaintiff is more properly determined, as Pond suggests, in the context of cases specifically addressing the liability for professional negligence of an attorney to persons other than the attorney's client. ■ We begin, however, by noting the general principle, recently and succinctly stated by the Supreme Court in *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583 [257 Cal.Rptr. 98, 770 P.2d 278], that, " '[T]he *negligent* causing of emotional distress is not an independent tort but the tort of *negligence . . . .*' (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195.) 'The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.' [Quoting *Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1239 (209 Cal.Rptr. 189)]." (*Id.* at p. 588.)

"Foreseeability" and "policy considerations" are not determined in a vacuum, but rather depend, in our view, upon the particular circumstances in which the purported wrongful conduct occurred. ■ Accordingly, we look first to cases specifically involving attorney liability to third party nonclients for professional negligence in order to resolve the issue presented here. We begin with *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], where the Supreme Court abandoned the requirement of privity of contract and held that " . . . intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover as third-party beneficiaries." (*Id.* at p. 591.) The court concluded " . . . that the determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to [the plaintiff], the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the

---

whether Pond owed plaintiff a duty of care, the breach of which would support recovery of emotional distress damages. This issue was not presented in Burger's writ petition. The law of the case, therefore, does not apply.

defendant's conduct and the injury, and the policy of preventing future harm. [Citing *Biankanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].]" (*Id.* at p. 588.)

*Lucas* has been applied in a long line of cases involving recovery of economic losses sustained by third party, nonclients as the result of an attorney's purported professional negligence. We followed *Lucas* in *Mason* v. *Levy & Van Bourg* (1978) 77 Cal.App.3d 60 [143 Cal.Rptr. 389], where we held, among other things, that attorneys who accepted cases on a contingency fee referral basis from another attorney were not liable to the referring attorney for alleged negligence in failing to properly prosecute the cases to settlement or trial. In reaching that conclusion, we noted that " . . . generally the scope of liability has been extended to cases in which the third person was *intended* to be benefitted [*sic*] by the attorney's performance in a transaction (such as the intended beneficiary under an improperly drawn will)." (*Id.* at p. 68, citing *Lucas* v. *Hamm, supra*, 56 Cal.2d 583.)

In *Fox* v. *Pollack* (1986) 181 Cal.App.3d 954 [226 Cal.Rptr. 532], where Division Five of the First District determined that an attorney hired by one party to a real estate transaction is not liable for alleged professional negligence to another party to the transaction, recognizing that an attorney has no responsibility to protect the interests of an adverse party, the court recounted the historical development of attorney liability for professional negligence to persons other than clients. The court noted that, "Following *Lucas*, attorneys acting for their clients have been held liable to third parties in other transactions which were intended to directly benefit the third party, or in which potential harm to the third party from professional negligence was reasonably foreseeable. Illustrative are *Donald* v. *Garry* (1971) 19 Cal.App.3d 769 . . . , wherein an attorney for a collection agency who allowed a complaint to be dismissed for lack of prosecution was held liable to the creditor who assigned the claim to the agency for collection. Also, attorneys hired by their primary clients to represent third parties owe a fiduciary duty to the third party they are retained to protect. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136 . . . [duty of attorney hired by insurance carrier to defend the insured under the insurance policy].) In *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 . . . , it was held that a law firm could be liable to a third party lender for negligent misrepresentation in furnishing a letter containing incorrect and misleading data to its client, knowing the letter would be shown to prospective lenders in order to obtain a loan." (*Id.* at p. 961.)

██ The court in *Fox* concluded that, "With certain exceptions, an attorney has no obligation to a nonclient for the consequences of professional negligence—that is, the attorney is not burdened with any duty toward

nonclients merely because of his or her status as an attorney. [Fn. omitted.] The existence of such a duty is a question of law dependent upon 'a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citations.]' [Citations.]." (181 Cal.App.3d at p. 960.)

Applying the *Lucas* and *Fox* analyses to the facts in the case at bench, we conclude that Pond has no liability to plaintiff for alleged professional negligence occurring during the course of Pond's representation of Kenneth Burger. As we recognized in *Mason*, the first factor, i.e., the extent to which the transaction was intended to benefit or affect plaintiff, focuses on the *intended* benefit or effect resulting from "the attorney's performance in a transaction." (*Mason* v. *Levy & Van Bourg, supra*, 77 Cal.App.3d at p. 68.) In other words, the benefit or affect must be both intended and an objective of the particular service the attorney was retained to perform. We base this conclusion not only on our earlier decision in *Mason*, but also on a synthesis of the cases cited in *Fox* where, in each instance, the attorney's service, *by its very nature*, was intended to benefit or affect someone in addition to the client. Thus, in *Lucas*, the Supreme Court noted that " . . . one of the main purposes which the transaction between defendant [attorney] and the testator intended to accomplish was to provide for the transfer of property to plaintiffs [beneficiaries] . . . ." (*Lucas* v. *Hamm, supra*, 56 Cal.2d at p. 589.)

The transaction between Kenneth Burger and Pond was not intended to benefit or affect plaintiff. The main, and in our view sole, purpose of the Burger—Pond transaction was to dissolve Kenneth Burger's existing marriage. There was nothing about Pond's employment to dissolve Burger's marriage which, by the very nature of the employment, was intended to benefit or affect plaintiff. Pond's alleged knowledge that Burger intended immediately to marry plaintiff and have children does not alter our view. Any benefit to, or affect on, plaintiff resulted not as an intended objective or purpose of the legal services Pond was retained to perform, but rather, from plaintiff's relationship with Burger.

There are sound considerations of policy which further persuade us that Pond's liability for professional negligence should not extend to plaintiff. As we recognized in *Mason*, "It is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his clients. [Citation.] This loyalty should not be diluted by a duty owed to some other person, such as [a future spouse]." (*Mason* v. *Levy & Van Bourg, supra*, 77 Cal.App.3d at p. 66.) A marital dissolution is rife with instances in which the client's interests and those of the client's future spouse may diverge. Division of marital property, spousal support and child support, custody and visitation issues must normally be addressed by the attorney in the

proper representation of the divorcing client. Unquestionably, the client's future spouse will be affected by the resolution of these matters but the loyalty demanded by the attorney-client relationship dictates that the attorney consider only the interests of the client. Were we to extend to plaintiff Pond's liability for alleged professional negligence in handling Kenneth Burger's divorce, "[t]he result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of legal services received by the client. [Fn. and citation omitted.]" (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737].)

The "policy of preventing future harm" is not affected by our conclusion here. Pond's liability for alleged professional negligence clearly extends to Kenneth Burger. This is not a situation like that presented in *Lucas* v. *Hamm* where the attorney's professional negligence comes to light only after the client-testator is dead, such that if the third party, intended beneficiary is not entitled to recover, no one may do so. Thus, by not extending Pond's liability to include plaintiff, we do not abrogate our related responsibility of promoting professional competence and skill among attorneys in the performance of their duties. Kenneth Burger is a party to this action and, if he proves Pond's negligence, will hold Pond accountable for his failure to perform his duties with reasonable competence.

Finally, even if we were to address the issue of Pond's liability solely under *Molien*, we would nevertheless reach the same conclusion, first, because *Molien* is factually distinguishable and second, because "foreseeability" is not a substitute for legal duty. Turning to the factual distinctions, unlike the defendant physician in *Molien*, who not only misdiagnosed his patient as having syphilis, but also directed that the patient tell her husband that he should be tested, (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 919) Pond did not direct any action or information toward plaintiff. Plaintiff's contrary assertion notwithstanding, we are of the view that none of Pond's *conduct* was directed at plaintiff. As discussed previously, plaintiff did not ask Pond to act as her attorney and Pond did not give plaintiff any legal advice, directly or indirectly. Thus, although plaintiff may have had "direct *contact*" with Pond, none of Pond's conduct was directed at her.

Further, under *Molien*, Pond's liability to plaintiff depends initially upon the existence of a duty of care. (See *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 921-922.) Thus, the court focused in *Molien* on "foreseeability," in part, to determine whether a duty existed. (*Id.* at p. 923.) Since its decision in *Molien*, the court has placed less emphasis on foreseeability, explaining that, "Our decision [in *Molien*] did not, however, purport to create a cause of action for the negligent infliction of emotional

distress based *solely* upon the foreseeability that serious emotional distress might result. It is plainly foreseeable, for example, that close family members of a patient would suffer severe emotional distress if told that the patient had been diagnosed as suffering from a terminal illness, but without more, the patient's physician would not be liable for that distress whether or not the diagnosis was erroneous. [Citation.]" [Italics added.] (*Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc., supra*, 48 Cal.3d at pp. 589-590.)

The court concluded in *Marlene F.* that, "Damages for severe emotional distress, rather, are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (48 Cal.3d at p. 590.) Although plaintiff alleged that Pond's duty to her arose from the "special relationship" which resulted when Kenneth Burger retained Pond as his attorney, plaintiff has not demonstrated the existence of any facts which support this allegation. The parties' respective factual showings in the trial court reflect, at best, that plaintiff had contact with Pond during which she expressed how important it was to her that Kenneth Burger get a divorce so that she and Burger could marry and have children. These facts do not, in our view, establish a legally recognized, protectable relationship between plaintiff and Pond.

As previously discussed, Pond did not assume a duty of care toward plaintiff. Pond never agreed, implicitly or explicitly to perform legal services intended directly to benefit plaintiff. Plaintiff's filings in the trial court reflect, in our view, that Pond did nothing more than listen to plaintiff's concerns.

Accordingly, we conclude in light of the principles and policy considerations discussed above that the trial court properly determined that Pond, as a matter of law, had no liability to plaintiff for alleged professional negligence.

## DISPOSITION

The judgment is affirmed.

Dabney, J., and Timlin, J., concurred.