# IN THE SUPREME COURT OF CALIFORNIA

SHARMALEE GOONEWARDENE,
Plaintiff and Appellant,

v.

ADP, LLC, et al.,
Defendants and Respondents.

S238941

Second Appellate District, Division Four
B267010

Los Angeles County Superior Court
TC026406

February 7, 2019

Chief Justice Cantil-Sakauye authored the opinion of the court, in which Justices Chin, Corrigan, Liu, Cuéllar, Kruger and Irion, J.[*] concurred.

---

[*]    Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

GOONEWARDENE v. ADP, LLC

S238941


Opinion of the Court by Cantil-Sakauye, C. J.


Under the Labor Code, an employee who believes he or she has not been paid the wages due under the applicable labor statutes and wage orders may bring a civil action against his or her employer. (See, e.g., Lab. Code, § 1194; *Martinez v. Combs* (2010) 49 Cal.4th 35, 49-51; see also Lab. Code, § 2699.) This case presents the question whether, when an employer hires an independent payroll service provider (hereafter payroll company) to take over all the payroll tasks that would otherwise be performed by an internal payroll department, the employee may bring a civil action against not only his or her employer but against the payroll company as well.

The Court of Appeal, while agreeing with prior appellate court decisions that a payroll company cannot properly be considered an employer of the hiring business's employee that may be liable under the applicable labor statutes for failure to pay wages that are due, held that the employee may nonetheless maintain causes of action for unpaid wages against the payroll company for (1) breach of the payroll company's contract with the employer under the third party beneficiary doctrine, (2) negligence, and (3) negligent misrepresentation. We granted review to determine the validity of the Court of Appeal's conclusions with respect to these three causes of action.

For the reasons discussed hereafter, we disagree with the Court of Appeal's conclusion as to each of the proposed causes of action.

First, we conclude that the Court of Appeal erred in holding that an employee may maintain a breach of contract action against the payroll company under the third party beneficiary doctrine. As explained, under California's third party beneficiary doctrine, a third party — that is, an individual or entity that is not a party to a contract — may bring a breach of contract action against a party to a contract only if the third party establishes not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

Here, we conclude that whether or not a contract between an employer and a payroll company will in fact generally benefit employees with regard to the wages they receive, providing a benefit to its employees with regard to the wages they receive is ordinarily not a motivating purpose of the contracting parties. Instead, the relevant motivating purpose of the contracting parties is to provide a benefit *to the employer*. In addition, permitting each employee to name the payroll company as an additional defendant in any wage and hour lawsuit an employee may pursue would impose considerable litigation defense costs on the payroll company that inevitably would be passed on to the employer through an increased cost of the payroll company's services, a result that would not be consistent with the objectives of the contract and

the reasonable expectations of the employer or payroll company. Accordingly, we conclude that an employee should not be viewed as a third party beneficiary who may maintain an action against the payroll company for an alleged breach of the contract between the employer and the payroll company with regard to the payment of wages.

Second, we conclude that the Court of Appeal also erred in determining that an employee who alleges that he or she has not been paid wages that are due may maintain tort causes of action for negligence and negligent misrepresentation against a payroll company. As we explain, in light of a variety of policy considerations that are present in the wage and hour setting, we conclude that it is neither necessary nor appropriate to impose upon a payroll company a tort duty of care with regard to the obligations owed to an employee under the applicable labor statutes and wage orders and consequently that the negligence and negligent misrepresentation causes of action lack merit.

Accordingly, we conclude that the decision of the Court of Appeal should be reversed insofar as it held that plaintiff employee in this case may proceed against defendant payroll company on causes of action for breach of contract, negligence, and negligent misrepresentation.

## I. FACTS AND PROCEEDINGS BELOW

### A. Trial Court Proceedings

In April 2012, plaintiff Sharmalee Goonewardene (plaintiff) filed the initial complaint in the underlying proceeding against her former employer, Altour International, Inc. (Altour), alleging causes of action for wrongful termination, breach of contract, violations of the Labor Code

and related causes of action. The complaint alleged that Altour failed to pay plaintiff the wages she was due under the Labor Code and applicable wage order and wrongfully terminated her when she brought this failure to Altour's attention.

After the trial court sustained a number of demurrers with leave to amend, plaintiff filed a fourth amended complaint (4AC). In addition to the numerous claims against Altour, the 4AC included a new, single cause of action against ADP, LLC (ADP), a payroll company that provided payroll services to Altour,[1] alleging that ADP had engaged in unfair business practices under the Unfair Competition Law based on its alleged failure to provide plaintiff with adequate documentation and records regarding her compensation.

After ADP demurred to the 4AC, plaintiff notified the court that she wanted to assert additional claims against ADP, and the court deferred ruling on ADP's demurrer to the 4AC to permit plaintiff to file a motion for leave to file a fifth amended complaint (5AC). Plaintiff thereafter filed such a motion, indicating that she intended to assert claims of wrongful termination, breach of contract, unfair business practices, false advertising, negligence, and negligent misrepresentation against Altour and ADP. The trial court then sustained ADP's demurrer to the 4AC and its opposition to the motion for leave

---

[1] In addition to ADP, LLC, subsequent complaints also named as defendants the related entities of ADP Payroll Services, Inc. and AD Processing, LLC. For convenience we refer to all of the related payroll company defendants as ADP.

to file a 5AC with regard to any claim that was based on the premise that ADP could properly be considered a joint employer of plaintiff but permitted plaintiff to file a 5AC on the remaining claims.

Thereafter, plaintiff filed a 5AC, but notwithstanding the trial court's prior ruling, the 5AC included claims based on ADP's alleged status as a joint employer of plaintiff as well as additional claims based on other legal theories. In June 2015, the trial court sustained ADP's demurrer to the 5AC without leave to amend with regard to all causes of action and directed ADP to prepare a final order reflecting its ruling.

While that order was pending, plaintiff submitted a motion for reconsideration and for permission to file a sixth amended complaint (6AC) that closely resembled the 5AC but included a few additional factual allegations. In August 2016, without explicitly ruling on the motion for reconsideration and permission to file the 6AC, the trial court entered a final order sustaining ADP's demurrer to the 5AC on all causes of action without leave to amend. The trial court subsequently entered a judgment dismissing plaintiff's action against ADP.

## B. Court of Appeal Decision

On appeal of the dismissal of the action against ADP, the Court of Appeal confined its review to the question whether the trial court had erred in sustaining ADP's demurrer to the 5AC without leave to amend, effectively denying plaintiff the opportunity to have the allegations contained in the proposed 6AC considered to determine whether those allegations are sufficient to state causes of action. (*Goonewardene v. ADP, LLC* (2016) 5 Cal.App.5th 154, 163-164 (*Goonewardene*).) Inasmuch as plaintiff's appellate briefs did not address the

validity of the claims raised in the 5AC, the Court of Appeal focused its attention solely on the facts alleged in the 6AC to determine whether they supported any of the causes of action asserted in the 6AC. (*Id.* at p. 163.)

Because it is important to an understanding of the scope of the Court of Appeal's holding, we quote in full the Court of Appeal's recitation of the facts alleged in the 6AC on which its decision was based:[2]

"ADP is a payroll services provider. Since 2000, ADP's advertising and corporate statements have stated that it provides payroll-related services to employers and employees. ADP offers to 'serve as an extension of [an employer's] payroll department and [to] take over all [the employer's] payroll tasks.' ADP holds itself out as possessing specialized knowledge regarding the calculation of wages under applicable wage laws and regulations, and states that it 'can save employer[s] money by calculating their payroll.' ADP's Web site advertises its expertise in tracking employee work hours, determining wages, and preparing payrolls in accordance with applicable laws. According to the Web site, ADP provides

---

[2]    In a footnote, the Court of Appeal noted with regard to its statement of facts: "We observe that the prolix and poorly organized 6AC ignores the rule that 'the complaint must contain a statement of the facts in ordinary and concise language . . . .' [Citation.]  In such cases, we 'disregard any defects in the pleading which do not affect the substantial rights of the parties,' and assess whether 'there are averments of ultimate facts sufficient to constitute a cause of action . . . .' [Citation.]"  (*Goonewardene, supra,* 5 Cal.App.5th at p. 164, fn. 3.)

' "self-service tools" ' allowing employees to view their attendance, vacation benefits, and time card approvals.

"At some point, ADP entered into an unwritten contract with Altour, which provides travel-related services. Under that agreement, ADP calculated payrolls, maintained employee records, offered legal advice, and provided other wage-related services for the benefit of Altour and its employees. According to the 6AC, ADP entered into 'a partnership or joint venture with Altour for the purpose of handling Altour's payroll and maintaining records and confidential information regarding Altour's employees.' (Underscoring omitted.)

"[Plaintiff's] ethnicity is Sinhalese and her nationality is Sri Lankan. In November 2005, [plaintiff] began her employment with Altour. She answered telephones, made airline, automobile, and hotel reservations, and issued electronic tickets and refunds. Because she worked on teams that provided services '24 hours a day 365 days of the year,' she accrued overtime hours. [Plaintiff] 'logged directly into an ADP system to track her earnings.'

"From 2005 to 2012, [plaintiff] did not receive the compensation due her, including overtime compensation, and she was denied meal and rest breaks required under Labor Code section 226.7. . . .

"Under ADP's agreement with Altour, the 6AC alleges, ADP maintained [plaintiff's] earnings records, added the hours on her time cards, calculated her earnings, and provided her with an earnings statement. ADP also was responsible for determining whether appellant was to receive, inter alia, overtime or double time (that is, overtime reflecting a doubled hourly rate of pay), in accordance with applicable labor laws.

ADP alone was responsible for maintaining [plaintiff's] records relating to her compensation, adding the hours shown on her time cards, and applying the labor laws to determine her wages.

"ADP failed to act with 'even scant care' in calculating [plaintiff's] wages. (Underscoring omitted.) Her earnings statements provided by ADP never contained a breakdown of her regular hours, overtime hours or double overtime hours, and did not reflect data regarding meal and rest breaks. Although her time cards reflected facts requiring the payment of double-time compensation, she received no such payment. She was paid twice a month on a basis that was intentionally confusing and did not comply with the wage orders of the Industrial Welfare Commission (IWC). According to the 6AC, Altour and ADP knew that [plaintiff] was not being paid in accordance with California law.

"[Plaintiff] reasonably relied on the earnings statements provided to her. In 2010, she noticed disparities between her own bookkeeping and her hours worked, as shown on her paychecks. In January 2012, she was terminated. According to the 6AC, she was terminated 'on a pretext and in retaliation for [her] efforts to be paid fairly and to receive those benefits to which she was legally entitled.'" (*Goonewardene, supra*, 5 Cal.App.5th at pp. 164-166, fn. omitted.)

After setting forth these facts, the Court of Appeal initially held that insofar as any of plaintiff's proposed causes of action against ADP in the 6AC rested on the theory that ADP could properly be viewed as a joint employer of plaintiff, the causes of action were without merit. (*Goonewardene, supra*, 5 Cal.App.5th at pp. 166-171.) In this regard, the Court

of Appeal relied upon the appellate court decision in *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, which held that a payroll company could not properly be found to be an employer of the hiring company's employees either for purposes of California wage orders and labor statutes or under the federal Fair Labor Standards Act (FLSA). (*Goonewardene*, *supra*, 5 Cal.App.5th at pp. 166-170.)

The Court of Appeal went on to hold, however, that "the proposed 6AC adequately pleads claims [against ADP] for breach of contract, negligent misrepresentation, and negligence based on allegations that [ADP] performed payroll services for [plaintiff's] benefit in an inaccurate and negligent manner." (*Goonewardene*, *supra*, 5 Cal.App.5th at p. 162.)

As explained more fully below, the Court of Appeal's conclusion that the 6AC adequately states a cause of action by plaintiff against ADP for breach of contract rested on its determination that the allegations were sufficient to demonstrate that, under the governing California third party beneficiary doctrine, plaintiff could properly be found to be a third party beneficiary of the contract between Altour and ADP. (*Goonewardene*, *supra*, 5 Cal.App.5th at pp. 171-174.) The Court of Appeal stated in this regard: "[W]hen an employer enters into a contract with a service provider by which the provider is to take over the employer's payroll tasks, including the preparation of the payrolls themselves, the employees constitute third party creditor beneficiaries of the contract between the employer and service provider. [Citations.] . . . The gravamen of [the 6AC's] allegations is that Altour engaged ADP to discharge Altour's wage-related legal duties to its employees, that is, Altour's obligations under the Labor Code and applicable wage orders to accurately calculate

employees' wages, fully distribute those wages in a timely manner, and provide employees with accurate earnings statements." (5 Cal.App.5th at p. 173.)

Thereafter, in analyzing the causes of action for negligent misrepresentation and negligence, the Court of Appeal found the allegations in the 6AC sufficient to support such tort causes of action, relying in part on its prior determination that plaintiff qualified as a third party beneficiary of the Altour/ADP contract. (*Goonewardene, supra,* 5 Cal.App.5th at pp. 177, 181-183.)

Accordingly, while the Court of Appeal affirmed the trial court judgment in favor of ADP with regard to all causes of action other than the causes of action for breach of contract, negligent misrepresentation and negligence, it reversed the trial court judgment "to the extent the trial court denied [plaintiff] leave to file an amended complaint asserting claims against [ADP] limited to breach of contract, negligent misrepresentation, and negligence." (*Goonewardene, supra,* 5 Cal.App.5th at p. 189.)

ADP sought review of the Court of Appeal decision insofar as the decision held that plaintiff's suit against ADP may go forward with respect to the causes of action for breach of contract, negligent misrepresentation and negligence. We granted review to consider the validity of the Court of Appeal's decision regarding these three causes of action.

## II. UNDER CALIFORNIA'S THIRD PARTY BENEFICIARY DOCTRINE, IS PLAINTIFF PROPERLY CONSIDERED A THIRD PARTY BENEFICIARY OF THE CONTRACT BETWEEN HER EMPLOYER AND ADP?

We turn first to the Court of Appeal's conclusion that plaintiff may maintain a cause of action for breach of contract against ADP.

As noted, the 6AC alleges that Altour, plaintiff's employer, entered into an unwritten contract with ADP "for the benefit of Altour and its employees" under which ADP was to perform all of the payroll services for Altour, including maintaining its employees' earnings records, adding hours on their time cards, calculating their wages under the applicable labor laws, and preparing the paychecks and pay stubs for the employees. The 6AC further alleges that ADP failed to comply with its obligations under the contract by negligently failing to provide plaintiff with paychecks and pay stubs that accurately reflected the wages she was due under the applicable labor statutes and wage orders. The Court of Appeal agreed with plaintiff that the allegations in the 6AC are sufficient to support a breach of contract action by plaintiff against ADP under the third party beneficiary doctrine. (*Goonewardene*, *supra*, 5 Cal.App.4th at pp. 171-174.)

In California, as in other jurisdictions, it is well established that under some circumstances a third party may bring an action for breach of contract based upon an alleged breach of a contract entered into by other parties. Civil Code section 1559, enacted as one of the provisions of the original 1872 Civil Code, declares: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time

before the parties thereto rescind it." Section 1559 has not been amended since its enactment in 1872.

As we shall see, the fact that Civil Code section 1559 was adopted as part of the original 1872 Civil Code is quite significant. In *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 (*Li*), this court explained at some length that the provisions of the original Civil Code that were enacted in 1872 to codify the then-existing common law rules were not intended to freeze the common law doctrines in the form they were understood in 1872 but rather contemplated the possibility of future judicial development of such doctrines, as was true of common law rules generally. (*Id.* at pp. 814-823.) In *Li*, the specific question before the court was whether Civil Code section 1714, which set forth the common law doctrine of contributory negligence under which a plaintiff's negligent conduct operated to completely bar any recovery by the plaintiff against a negligent defendant, should properly be interpreted to preclude this court from adopting as a common law rule the doctrine of comparative negligence under which a plaintiff's negligence reduces, but does not totally bar, a plaintiff's recovery against a negligent defendant. This court concluded that section 1714 should not properly be interpreted to preclude this court from adopting comparative negligence as the prevailing California common law rule. The court explained: "[I]t was not the intention of the Legislature in enacting section 1714 of the Civil Code, *as well as other sections of that code declarative of the common law*, to insulate the matters therein expressed from further judicial development; rather it was the intention of the Legislature to announce and formulate existing common law principles and definitions for purposes of orderly and concise presentation and with a distinct view toward

continuing judicial evolution." (13 Cal.3d at p. 814, italics added.)

Civil Code section 1559 — setting forth California's third party beneficiary doctrine — is one of the "other sections" of the original 1872 Civil Code referred to in *Li* that was declarative of the common law and was not intended "to insulate the matters therein expressed from further judicial development." (*Li, supra,* 13 Cal.3d at p. 814.) California decisions, applying the third party beneficiary doctrine in a variety of circumstances since 1872, have understood section 1559 in just this fashion, and have not viewed the provision as restricting California's third party beneficiary doctrine to the common law rule as it existed in 1872. (See, e.g., *Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400-407 (*Socoma Companies*) [looking in part to third party beneficiary principles set forth in subsequently adopted Restatements of Contracts]; *Lucas v. Hamm* (1961) 56 Cal.2d 583, 590 [noting effect of section 1559 is simply "to exclude enforcement by persons who are only incidentally or remotely benefited"].) Accordingly, we must determine whether, under the circumstances at issue here, plaintiff is entitled to bring an action against ADP for its alleged breach of its contract with Altour under the common law third party beneficiary doctrine as reflected in the current governing California decisions.

From the beginning of the twentieth century, virtually all American courts applying common law contract principles have recognized that it is appropriate *under some circumstances* to permit an individual or entity that is not a party to a contract to bring an action to enforce the contract. (See, e.g., Eisenberg, *Third-Party Beneficiaries* (1992) 92 Colum. L.Rev. 1358, 1371-1374 (*Eisenberg*).) Courts have struggled, however, to

formulate useful, general principles to identify those circumstances in which a third party should be permitted to maintain an action for an alleged breach of a contract to which it is not a contracting party, as distinguished from the usual instance in which only the contracting parties may bring an action under the contract. (See, e.g., Crawford, *Chief Justice Wright and the Third Party Beneficiary Problem* (1977) 4 Hastings Const. L.Q. 769, 771-772 ["Few areas of contract law have consistently raised more thorny theoretical and practical difficulties for lawyers, judges, and scholars than the rights of nonparties to enforce contractual promises"].)

In the first Restatement of Contracts, published in 1932, the drafters divided the cases that had found that third parties were entitled to enforce a contract into two categories: one involving so-called "creditor beneficiaries" and the other involving so-called "donee beneficiaries." (See Rest. Contracts, § 133 (Restatement First).)[3] When the Restatement Second of

---

[3] The classic creditor-beneficiary case involved a contract between party A and party B, in which A, in return for some consideration, promised party B that it would pay a preexisting debt that party B owed to nonparty T; in that setting, if A had not fulfilled its promise, courts permitted T to sue A to enforce the promise. (See, e.g., *Lawrence v. Fox* (1859) 20 N.Y. 268 [in contract between Holly and Fox, Fox, in return for a loan from Holly of $300, promised to pay $300 to Lawrence in satisfaction of a preexisting debt that Holly owed Lawrence; in subsequent suit, Lawrence was permitted to sue Fox for the $300].) The classic donee-beneficiary case involved a contract in which party A, in return for some consideration, promised party B that it would pay nonparty T a sum that B wished to give to T as a gift; if A failed to fulfill its promise, T was permitted to

Contracts (Restatement Second) was adopted in 1979, the drafters concluded that "the terms 'donee' beneficiary and 'creditor' beneficiary carry overtones of obsolete doctrinal difficulties" (Rest.2d Contracts, ch. 14, Introductory Note, p. 439) and avoided those terms. Instead, under the Restatement Second, a third party beneficiary who is entitled to enforce a contract entered into between other parties is designated an "intended beneficiary." (Rest.2d Contracts, § 302(1).) Although the Restatement Second retained traces of the creditor-beneficiary and donee-beneficiary categories (*id.*, § 302(1)(a), (1)(b)), it refocused the principal inquiry regarding whether a third party beneficiary should be considered an intended beneficiary on the question whether "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the [contracting] parties." (*Id.*, § 302(1).)

Although our past decisions have at times referred to and invoked the creditor-beneficiary and donee-beneficiary labels (see, e.g., *Socoma Companies*, *supra*, 11 Cal.3d at pp. 400-401), this court has not relied primarily on those categories or the Restatement formulations in the numerous cases in which we

---

sue A to enforce the promise. (See, e.g., *Seaver v. Ranson* (N.Y. 1918) 120 N.E. 639 [just prior to wife's death, husband promised wife that if she left her house to him for his life, he would alter his will to leave a sum of money to her niece; when husband, after obtaining the house for his lifetime, later died without altering his will, niece was permitted to sue the executor of husband's estate to enforce husband's promise to wife].)

have discussed and applied the third party beneficiary doctrine.[4] Instead, a review of this court's third party beneficiary decisions[5] reveals that our court has carefully

---

[4] A number of academic commentators have identified a variety of problems and failings in the Restatement formulations of the third party beneficiary doctrine. (See, e.g., *Eisenberg, supra,* 92 Colum. L.Rev. at pp. 1376-1384; Prince, *Perfecting the Third Party Beneficiary Standing Rule Under Section 302 of the Restatement (Second) of Contracts* (1984) 25 B.C. L.Rev. 919, 990-995; Summers, *Third Party Beneficiaries and the Restatement (Second) of Contracts* (1982) 67 Cornell L.Rev. 880, 891-899.)

[5] See *Martinez v. Combs, supra,* 49 Cal.4th at p. 77 [farmworkers could not recover unpaid wages from produce merchants who regularly purchased produce from the farmworker's employer on the theory that the workers were third party beneficiaries of the employer/merchant contract]; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 511, 524-528 [defendant car manufacturer was not entitled, under the third party beneficiary doctrine, to obtain the benefit of an earlier broad contractual release of liability entered into between the plaintiff and another potential defendant]; *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436-438 [private doctor who performed surgery at hospital but was not employed by the hospital was not entitled, under the third party beneficiary doctrine, to obtain coverage under the insurance policy issued by insurance company to hospital]; *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940-944 [injured claimant was not entitled to sue tortfeasor's insurer, under third party beneficiary doctrine, for breach of the insurer's duty to settle under the insurer's contract with the tortfeasor, in the absence of an assignment of such a cause of action by the insured tortfeasor to the claimant]; *Socoma Companies, supra,* 11 Cal.3d 394, 400-407 [plaintiffs, unemployed persons who received government-funded job training from defendant

examined the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three

---

companies but failed to obtain promised employment, were not entitled to bring suit for damages against defendants, under third party beneficiary doctrine, for defendants' alleged breach of their contract with the federal government to provide such job training and employment]; *Lucas v. Hamm, supra*, 56 Cal.2d 583, 589-591 [intended beneficiaries of a will, who failed to obtain inheritance due to alleged negligence of attorney who drafted the will, were entitled to sue the attorney, under the third party beneficiary doctrine, for attorney's alleged breach of contract with testator]; *Brown v. Superior Court* (1949) 34 Cal.2d 559, 564-565 [where husband and wife agreed to make mutual wills in favor of intended devisees, those devisees were entitled, under third party beneficiary doctrine, to bring suit to enforce agreement]; *Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232, 244-249 (*Hartman Ranch*) [adjacent landowner, whose subsurface oil was improperly drained by sublessee's drilling, was entitled to sue sublessee, under third party beneficiary doctrine, for sublessee's alleged breach of its obligations under the lease and sublease]; *Calhoun v. Downs* (1931) 211 Cal. 766, 770-771 [broker was entitled, under third party beneficiary doctrine, to enforce promisor's agreement to assume promisee's obligation to pay broker's commission].

elements must be satisfied to permit the third party action to go forward.

With regard to the second element, we note that our past cases have sometimes referred to this element of the third party beneficiary doctrine as a requirement that the "purpose" of the contract be to benefit the third party (see, e.g., *Lucas v. Hamm, supra*, 56 Cal.2d at pp. 589-590) and sometimes as a requirement that there be "an intent to benefit" the third party (see, e.g., *id.* at p. 591; *Murphy v. Allstate Ins. Co., supra*, 17 Cal.3d at p. 944; *Garcia v. Truck Ins. Exchange, supra*, 36 Cal.3d at p. 436.) Because of the ambiguous and potentially confusing nature of the term "intent" (see *Eisenberg, supra*, 92 Colum. L.Rev. at p. 1378), this opinion uses the term "motivating purpose" in its iteration of this element to clarify that the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract. To avoid any possible confusion, however, we emphasize that our intent-to-benefit caselaw remains pertinent in applying this element of the third party beneficiary doctrine.

With regard to the third element, we observe that academic commentators have pointed out that the parties to a contract are typically focused on the terms of performance of the contract rather than on the remedies that will be available in the event of a failure of performance (see, e.g., *Eisenberg, supra*, 92 Colum. L.Rev. at p. 1388), and that our cases have not required a showing that the contracting parties actually considered the third party enforcement question as a prerequisite to the applicability of the third party beneficiary doctrine. (See, e.g., *Lucas v. Hamm, supra*, 56 Cal.2d at pp. 589-591; *Hartman Ranch, supra*, 10 Cal.2d at pp. 244-246.)

Accordingly, the third element does not focus upon whether the parties specifically intended third party enforcement but rather upon whether, taking into account the language of the contract and all of the relevant circumstances under which the contract was entered into, permitting the third party to bring the proposed breach of contract action would be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Ante*, p. 17.) In other words, this element calls for a judgment regarding the potential effect that permitting third party enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into.

Furthermore, the requirement in the third element that third party enforcement be consistent with "the objectives of the contract" is comparable to the inquiry, proposed in Professor Eisenberg's article, regarding whether third party enforcement will effectuate " 'the contracting parties' performance objectives,' " namely "those objectives of the *enterprise* embodied in the contract, read in the light of surrounding circumstances . . . ." (*Eisenberg, supra*, 92 Colum. L.Rev. at p. 1385, original emphasis; see also Rest.2d Contracts, § 302(1) ["a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties"].) And the additional requirement in this element that third party enforcement be consistent as well with "the reasonable expectations of the contracting parties" reflects the teaching of prior California decisions that have denied application of the third party beneficiary doctrine when permitting the third party to maintain a breach of contract

action would not be consistent with the reasonable expectations of the contracting parties. (See, e.g., *Socoma Companies*, *supra*, 11 Cal.3d at pp. 402-403; *Hess v. Ford Motor Co.*, *supra*, 27 Cal.4th at pp. 526-528; *Garcia v. Truck Ins. Exchange*, *supra*, 36 Cal.3d at pp. 436-438; see also *Eisenberg*, *supra*, 92 Colum. L.Rev. at pp. 1375-1376, 1386-1387.)

Perhaps this court's two most prominent third party beneficiary decisions are *Lucas v. Hamm*, *supra*, 56 Cal.2d 583, and *Socoma Companies*, *supra*, 11 Cal.3d 394.

The issue in *Lucas v. Hamm*, *supra*, 56 Cal.2d 583, was whether the intended beneficiaries of a will could sue the attorney who had contracted with the testator to prepare the will, when, after the testator's death, the beneficiaries had not obtained their intended inheritance because of the attorney's alleged failure to fulfill his contractual obligation to properly prepare the will. In holding that the intended beneficiaries of the will could sue the attorney for breach of contract under a proper interpretation of California's third party beneficiary doctrine (and overruling an earlier decision that had reached a contrary result), the court stated: "Since, in a situation like those presented here . . . , the main purpose of the testator in making his agreement with the attorney is to benefit the persons named in his will *and this intent can be effectuated, in the event of a breach by the attorney, only by giving the beneficiaries a right of action*, we should recognize, as a matter of policy, that they are entitled to recover as third-party beneficiaries." (56 Cal.2d at p. 590, italics added.) Because, after the testator's death, the testator was no longer available to bring a breach of contract action against the attorney, it was consistent with the objectives of the contract and the

reasonable expectation of the contracting parties to permit the intended beneficiaries of the will to bring such an action at that time to enforce the attorney's alleged breach of the contract. (See *Eisenberg*, *supra*, 92 Colum. L.Rev. at pp. 1393-1394.)

On the other hand, in *Socoma Companies*, *supra*, 11 Cal.3d 394, our court, after reviewing the terms and the circumstances underlying the formation of the government contract at issue, concluded that the plaintiffs in that case, who had participated in a job training program that had been provided under the government contract but had not obtained the promised employment contemplated by the contract, were not entitled, under California's third party beneficiary doctrine, to bring a breach of contract action for damages against the defendant companies that provided the job training services. Although acknowledging that the plaintiffs "were among those whom the Government intended to benefit through defendants' performance of the contracts" (*id.* at p. 401), this court nonetheless concluded that the plaintiffs were not entitled to sue the defendants for the defendants' alleged breach of the contract because it would be inconsistent with the objectives of the contract and the reasonable expectations of the contracting parties to permit such third party lawsuits. In reaching this conclusion, the court relied in large part on a provision of the government contract that established a specific administrative process through which alleged breaches of the contract could be raised and resolved, as well as on the inclusion of a liquidated damages clause in the contract that restricted the defendant companies' potential liability under the contract. The *Socoma Companies* court explained that "the contracts' provisions for retaining the

Government's control over determination of contractual disputes and for limiting defendants' financial risks indicate a governmental purpose to exclude the direct rights [by beneficiaries of the job training program] against defendants claimed here." (11 Cal.3d at p. 402; see *Eisenberg, supra,* 92 Colum. L.Rev. at pp. 1410-1412.)

With these precedents in mind, we examine the Court of Appeal's conclusion that the allegations of the 6AC are sufficient, under California's third party beneficiary doctrine, to support a cause of action by plaintiff against ADP for ADP's alleged breach of its contract with Altour.

To begin with, it is important to note that in this case we do not have before us the specific terms of the actual contract between Altour and ADP. The 6AC simply alleges, on information and belief, that Altour and ADP entered into an unwritten contract under which ADP agreed to perform payroll tasks for Altour for the benefit of both Altour and its employees. Because of the present procedural posture of the case — an appeal of a dismissal of the action against ADP after the trial court sustained ADP's demurrer to the 5AC without leave to amend — we must assume the properly pleaded facts contained in the 6AC are true. (See, e.g., *Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 375.) The 6AC does not claim, however, that plaintiff was privy to the unwritten contract allegedly entered into between Altour and ADP, and the general allegation in the 6AC that the contract was for the benefit of Altour's employees as well as Altour leaves unclear in what sense the contract was intended to benefit the Altour employees.

In its opinion, the Court of Appeal referred to allegations in the 6AC relating to statements on ADP's website indicating that ADP's data processing system would make it possible for employees easily to obtain information regarding their work hour history, vacation benefits, and other employment related data. If this is the benefit that the parties to the contract allegedly intended to afford Altour's employees, the 6AC does not assert that plaintiff was denied such a benefit, and plaintiff's alleged failure to receive the wages she was due is unrelated to this promised benefit. Accordingly, although the Court of Appeal accurately observed that a third party's rights under the third party beneficiary doctrine may arise under an oral as well as a written contract (see, e.g., *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 606; *Lawrence v. Fox, supra,* 20 N.Y. at p. 275), here the 6AC's allegations concerning the alleged benefit that the unwritten contract between Altour and ADP allegedly conferred upon Altour's employees are too vague and conclusory to support the proposition that the parties to the Altour/ADP contract expressly or impliedly authorized Altour's employees to maintain a breach of contract action for unpaid wages against ADP.

The Court of Appeal, in concluding that plaintiff may maintain a breach of contract action against ADP on a third party beneficiary theory, relied instead on the allegations that, under ADP's contract with Altour, ADP agreed to "take over" all of Altour's ordinary payroll tasks, including calculating the wages Altour is obligated to pay each employee under the governing labor statutes and wage orders and issuing paychecks and pay stubs that reflect the correct wages. (*Goonewardene, supra,* 5 Cal.App.5th at p. 173.) The Court of

23

Appeal stated that ADP's obligations in this regard rendered each employee of Altour *a creditor beneficiary* of the Altour/ADP contract, on the theory that ADP's role under the contract was "to discharge" Altour's wage obligations to its employees. (*Ibid.*)

We conclude that the Court of Appeal erred in characterizing plaintiff as a creditor beneficiary of the Altour/ADP contract and permitting the breach of contract action to go forward on this theory under the third party beneficiary doctrine. Unlike past creditor beneficiary cases, in which one party to the contract (the promisor) agreed to pay a sum of money to a third party to discharge a preexisting debt of the other party to the contract (the promisee) (see, e.g., *Lawrence v. Fox, supra*, 20 N.Y. 268; accord *Calhoun v. Downs, supra*, 211 Cal. at pp. 770-771), here there is nothing to suggest that ADP agreed to pay the wages that Altour owes to its employees out of ADP's own funds. Instead, as in most employer/payroll company agreements,[6] it appears that ADP,

---

[6] The Internal Revenue Manual describes a "payroll service provider" in the following terms:

"1. A payroll service provider (PSP) is a third party that can help an employer administer payroll and employment taxes on behalf of an employer.

"2. An employer may enter into an agreement with a PSP under which the employer authorizes the PSP to perform one more of the following acts on the employer's behalf:

"• Prepare the paychecks for the employees of the employer.

"• Prepare Forms 940 and 941 for the employer using the employer's EIN.

under its contract with Altour, simply agreed to assist Altour by calculating the amount of wages that Altour owes to each employee in light of the applicable labor statutes and wage order and providing the ministerial services of making out paychecks and delivering the required pay information to each employee. In the absence of an allegation to the contrary, we must reasonably infer that the employees' wages were paid by

---

"• File Forms 940 and 941 for the employer, which are signed by the employer.

"• Make federal tax deposits (FTDs) and federal tax payments and submit this information for the taxes reported on the Forms 940 and 941.

"• Prepare Form W-3 and Forms W-2 for the employees of the employer using the employer's EIN.

"3. A PSP is not liable for an employer's employment taxes as either an employer or an agent.

"4. An employer's use of a PSP does not relieve the employer of its employment tax obligations or liability for employment taxes." (Internal Revenue Service, Internal Revenue Manual 5.1.24.4.2 (Mar. 2018) <https://www.irs.gov/irm/part5/irm_05-001-024r> [as of Feb. 5, 2019].) (All internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.)

See also Fogg, *In Whom We Trust* (2010) 43 Creighton L.Rev. 357, 384 ["A typical contract between a payroll tax provider and a small business entity might have the payroll tax provider preparing payroll, paying payroll, preparing the quarterly Form 941 form, and paying the Form 941 taxes. The payroll provider typically has an agreement allowing it to withdraw the necessary funds from the entity's bank account."].)

funds provided by their employer, Altour, rather than ADP. A payroll company's provision of the type of assistance relied upon by the Court of Appeal is quite distinct from agreeing to "discharge" the obligations that Altour owes to its employees under the applicable labor statutes and wage orders, as that term has been used in prior third party beneficiary decisions. (Cf. Rest.2d, Contracts, § 302(1)(a) & com. b, pp. 439-440.) For this reason, we conclude that plaintiff is not properly viewed as a creditor beneficiary of the Altour/ADP contract within the meaning of the third party beneficiary doctrine.

We turn to the question whether plaintiff may bring its breach of contract action under the three elements of California's third party beneficiary doctrine that we have discussed above. (*Ante*, pp. 16-20.)

Even if we assume, without deciding, that an employer's hiring of an independent payroll company will in fact generally benefit employees with regard to the wages they receive,[7] as

---

[7]     Even in the absence of the hiring of a payroll company, an employee is entitled to receive the wages and wage statements that are required under the applicable labor statutes and wage orders and may sue his or her employer if he or she does not receive them. (See, e.g., Lab. Code, § 1194.) Although it is possible that a specialized payroll company may do a better job than a small company in complying with the applicable legal requirements, if the payroll company makes the employer aware of applicable exceptions, restrictions or other legal rules that were not known to the employer and that operate to reduce the employer's wage obligations to its employees, the hiring of the payroll company may not in fact benefit employees with regard to the wages they receive. Thus, there may be some question whether such a contract will in

we have explained the fact that the employees will generally obtain a benefit from the contract is not sufficient in itself to authorize the employees to sue the payroll company under California's third party beneficiary doctrine. In addition, a motivating purpose of the contracting parties must be to provide such a benefit to employees. (See, e.g., *Garcia v. Truck Ins. Exchange, supra*, 36 Cal.3d at p. 436 ["A putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit him]"; *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 348 ["The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party"].)

When an employer hires a payroll company, providing a benefit to employees with regard to the wages they receive is ordinarily not a motivating purpose of the transaction. Instead, the relevant motivating purpose is to provide a benefit *to the employer*, with regard to the cost and efficiency of the tasks performed and the avoidance of potential penalties. Although the employer intends that the payroll company will accurately calculate the wages owed to its employees under the applicable labor statutes and wage orders, in situations in which it may be unclear or debatable as to how the applicable rules should be interpreted or applied, the employer would reasonably expect the payroll company to proceed with the

_____

fact generally provide a benefit to employees with regard to the wages they receive.

employer's interest in mind.  In short, the relevant motivating purpose of the contract is simply to assist the employer in the performance of its required tasks, not to provide a benefit to its employees with regard to the amount of wages they receive.

Moreover, even if a motivating purpose of such a contract were to provide a benefit to employees with regard to wages they receive, it still would not follow that the employees would be entitled to sue the payroll company for breach of contract under the third party beneficiary doctrine.  As this court's decision in *Socoma Companies*, *supra*, 11 Cal.3d at pages 401-402, teaches, even if a motivating purpose of the contracting parties is to provide a benefit to the employees, it still may be inconsistent with the objectives of the contract and the reasonable expectations of the contracting parties to permit the employees to sue the payroll company for an alleged breach of the contract.  (See Geis, *Broadcast Contracting* (2012) 106 Nw.U. L.Rev. 1153, 1195 ["There is an important analytical distinction between contracting for a benefit to an outsider and granting a right to sue for breach to that outsider"].)

In the present case, unlike in *Lucas v. Hamm*, *supra*, 56 Cal.2d 583, there is no need to permit a third party employee to bring suit to enforce an alleged breach by ADP of its obligations under the contract, because Altour is available and is fully capable of pursuing a breach of contract action against ADP if, by failing to comply with its contractual responsibilities, ADP renders Altour liable for any violation of the applicable wage orders or labor statutes.  Simply put, permitting an employee to sue ADP for an alleged breach of its contractual obligations to Altour is not necessary to effectuate the objectives of the contract.

Further, if a typical contract between an employer and a payroll company were interpreted to authorize each of the employer's employees to sue the payroll company for any alleged wage violation, such an interpretation would clearly impose substantial additional costs on the payroll company in light of the significant legal expense that would be entailed in defending the numerous wage and hour disputes that regularly arise between employees and employers. As a result, such an interpretation would likely lead a payroll company to pass these additional litigation costs on to the employer through a higher price for its payroll services, an increased cost that an employer would typically prefer to avoid. Thus, permitting employees to sue a payroll company for alleged wage violations would ordinarily be inconsistent with the reasonable expectations of the employer as well as the payroll company and also unnecessary because employees retain the right to obtain full recovery for unpaid wages from their employer. Accordingly, we conclude that a contract between an employer and a payroll company should not be understood to permit the employer's employees to sue the payroll company for an alleged breach of its obligations under its contract with the employer. (Accord *Lake Almanor Associates L.P. v. Huffman-Broadway Group, Inc.* (2009) 178 Cal.App.4th 1194, 1204 [where county hires a consultant to prepare an environmental impact report regarding a proposed development, the developer is not entitled, under the third party beneficiary doctrine, to sue the consultant for an alleged breach of contract in failing to timely prepare the report].)

In sum, because providing a benefit to employees is ordinarily not among the motivating purposes of a contract between an employer and a payroll company, and because it

would be inconsistent with the objectives of the contract and the reasonable expectations of the contracting parties to permit the employees to sue the payroll company for an alleged breach of its contract with the employer, we conclude that the Court of Appeal erred in finding that the allegations of the 6AC are adequate to state a cause of action for breach of contract by plaintiff against ADP under the third party beneficiary doctrine.

## III. MAY PLAINTIFF MAINTAIN TORT CAUSES OF ACTION AGAINST ADP FOR NEGLIGENCE AND/OR NEGLIGENT MISREPRESENTATION?

In addition to finding that the allegations of the 6AC supported plaintiff's cause of action against ADP for breach of contract under the third party beneficiary doctrine, the Court of Appeal concluded that the allegations of the 6AC supported causes of action against ADP for negligence and negligent misrepresentation. The Court of Appeal identified no case from California or any other jurisdiction in which an employee has been permitted to maintain a tort cause of action for negligence or negligent misrepresentation against a payroll company hired by his or her employer, and, for the reasons discussed hereafter, we conclude that neither of the proposed negligence-based tort causes of action against ADP is valid.

### A. Negligence Cause of Action

In *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 (*Bily*), we explained that "[t]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this

essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court." The existence or nonexistence of a common law legal duty of care is a question of policy that, depending upon the context, may turn on a court's consideration of a variety of factors. (See, e.g., *Rowland v. Christian* (1968) 69 Cal.2d 108, 113; *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*).) As this court observed in *Dillon v. Legg* (1968) 68 Cal.2d 728, a judicial conclusion that a legal duty exists in a particular context is " 'only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " (*Id.* at p. 734, quoting Prosser on Torts (3d ed. 1964) pp. 332-333.)

The threshold question here is whether ADP owed plaintiff, an employee of Altour with whom ADP had no contractual relationship, a common law duty of care with respect to the loss that plaintiff allegedly sustained as a result of ADP's alleged negligence in the performance of its contractual obligations to Altour.

In *Biakanja, supra,* 49 Cal.2d 647 — the initial decision in which this court held that it may be appropriate to impose tort liability in favor of a third party for a contracting party's negligent performance of a contract (see 6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts § 1327, p. 622) — the court described some of the factors that may properly be considered in deciding whether to recognize a tort duty of care to a third party in the absence of privity of contract. We stated: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the

plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (49 Cal.2d at p. 650.) Subsequent California cases have identified other policy considerations that may appropriately be considered in determining whether a tort duty of care should be recognized or imposed in the absence of privity of contract. (See, e.g., *Bily, supra*, 3 Cal.4th at pp. 399-406 [considering whether recognition of a duty of care on the part of auditors to potential third party investors would (1) impose liability out of proportion to fault, (2) be unnecessary in light of the prospect of private ordering, and (3) would likely have an adverse effect on the availability of audit services].)

Plaintiff argues that many of the factors identified in *Biakanja* support imposing on a payroll company a duty of care to an employee in this context because if a payroll company is negligent in failing to properly calculate an employee's wages pursuant to the applicable labor statutes and wage orders, the employee will suffer a foreseeable, direct, and readily ascertainable economic loss and will be denied the protection afforded by those remedial labor statutes and wage orders. Plaintiff points out that California cases have repeatedly emphasized the important role that such labor statutes and wage orders play in protecting the rights of workers (see, e.g., *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, 952-953; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702-703), and maintains that therefore California's public policy calls for the recognition in this context of a tort duty of care on the part of a payroll

company to the employees of the company that hired the payroll company.

Plaintiff is correct that employees unquestionably have an important and fundamental interest in the accurate and timely payment of wages as required by the applicable labor statutes and wage orders. As we explain, however, we conclude that a variety of policy considerations weigh against the imposition upon a payroll company of a tort duty of care to employees in this context.

First and perhaps most significantly, plaintiff's argument ignores the fundamental point that whenever a payroll company's negligence in calculating an employee's wages results in a violation of the applicable labor statutes or wage orders, California law already provides the employee with a full and complete remedy for any wage loss the employee sustains as a result of the payroll company's negligent conduct. An employee's interest in this regard is fully protected by the employee's well-established right under the labor statutes to recover in a civil action against the employer the full wages and other significant remedies (including attorney fees and potential civil penalties) that are authorized under those statutes. (See, e.g., Lab. Code, §§ 1194, 1197.1, 2699; *Martinez v. Combs, supra,* 49 Cal.4th 35.) Given the employer's clear and direct liability for any wage loss caused by the payroll company's negligence in calculating the wages that are due, the imposition of a separate tort duty of care on a payroll company is generally unnecessary to adequately protect the employee's interests. (Cf. *Cedars-Sinai Med. Center v. Superior Court* (1998) 18 Cal.4th 1, 11-13 [concluding recognition of tort action for spoliation of evidence is

unwarranted in part because of the availability of adequate alternative remedies].)

Second, imposing tort liability upon the payroll company is not needed as a means of deterring negligent conduct on the part of the payroll company. Under its contract with the employer, the payroll company is already obligated to act with due care in ensuring that the employer fulfills its obligations to its employees under the labor statutes and wage orders. The payroll company presumably will be liable to the employer if the payroll company's negligence in failing to comply with the applicable labor statutes or wage orders results in the employer being held liable in a suit brought by an employee against the employer. Imposing on a payroll company a tort duty to the employee will not appreciably increase the payroll company's incentive to avoid negligent conduct with respect to its compliance with the applicable labor statutes and wage orders.

Third, unlike other situations in which a tort duty of care to third parties has been imposed (see, e.g., *Heyer v. Flaig* (1969) 70 Cal.2d 223, 228-229), the payroll company has no special relationship with the employer's employees that would warrant recognition of such a duty of care. (Accord *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 343-344.) As we have already determined, under California's third party beneficiary doctrine plaintiff is not entitled to maintain even a breach of contract action against defendant payroll company. (*Ante,* pp. 11-30.) Given this conclusion, it would clearly be anomalous to impose tort liability, with its increased potential damages (see, e.g., *Ehrlich v. Menezes* (1999) 21 Cal.4th 543, 550-551), upon the payroll company based upon its alleged failure to perform its obligations under its contract with plaintiff's employer.

Fourth, the imposition on a payroll company of a duty of care to an employee may improperly distort the payroll company's performance of its contractual obligations to the employer in at least some circumstances. As already noted (*ante*, pp. 27-28), in the wage and hour context, the respective interests of an employer and an employee regarding the proper interpretation and application of the applicable labor statutes and wage orders are at times in conflict. When the meaning or scope of a labor statute or wage order is ambiguous or uncertain, imposing on the payroll company a tort duty of care to an employee may adversely affect the payroll company's fulfillment of its contractual obligations to the employer. This risk is particularly substantial because, as noted, the type of damages that are generally available in a tort action include items that are unavailable in a contract action, and, in instances in which the meaning of a provision of a labor statute or wage order is uncertain, the potential of greater liability may induce the payroll company to place the employee's interests above those of the employer with whom the payroll company has directly contracted.[8]

---

[8] In a variety of contexts, California courts have held that a professional or other business entity that enters into a contract to provide services to an individual or entity does not owe a tort duty of care to a third party with respect to an economic loss allegedly incurred by the third party when recognition of such a duty of care to the third party would create a potential conflict of obligations for the professional or business entity in light of its responsibility to the individual or business with which it has contracted. (See, e.g., *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*

Fifth and finally, imposition of a tort duty of care on a payroll company is likely to add an unnecessary and potentially burdensome complication to California's increasing volume of wage and hour litigation. Because an employee who fails to receive what he or she believes is the proper amount of wages due under the applicable labor statutes and wage orders will generally have no way of knowing whether the underpayment is due to the actions of the employer, the payroll company, or both the employer and the payroll company, the

_____

(2002) 27 Cal.4th 705, 716 [escrow holder did not owe duty of care to third party when imposition of duty would subject escrow holder to conflicting obligations]; *Goodman v. Kennedy*, *supra*, 18 Cal.3d at p. 344 [attorney who advised client on stock sale owed no duty of care to third parties who purchased stock from the client]; *Lake Almanor Associates L.P. v. Huffman-Broadway Group, Inc.*, *supra*, 178 Cal.App.4th at pp. 1205-1206 [environmental consultant hired by county to prepare environmental impact report owned no duty of care to developer of proposed project]; *Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 606 [construction manager hired by school district to oversee project owed no duty of care to third party architect who also worked on the project]; *Sanchez v. Lindsey Marden Claims Services, Inc.* (1999) 72 Cal.App.4th 249, 253 [independent claims adjuster hired by an insurer to assess claimed loss owed no duty of care to the insured claimant]; *Burger v. Pond* (1990) 224 Cal.App.3d 597, 605-606 [husband's divorce attorney owed no duty of care to husband's subsequent wife]; *Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1314 [attorney owed no duty of care to another attorney representing a third party in arms-length transaction with attorney's client]; *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1269 [attorney representing administrator of estate owed no duty of care to legatees of will].)

payroll company is likely to be joined as an additional party in virtually every wage and hour lawsuit, rendering such litigation more complicated and more difficult to settle. Inasmuch as an employee can obtain a full recovery for his or her economic loss in a wage and hour action against the employer alone, the substantial burden to the judicial system that would result from the addition of a tort action against the payroll company is likely to outweigh any potential benefit.

Considering the "'sum total'" of the relevant considerations of policy (*Dillon v. Legg*, *supra*, 68 Cal.2d at p. 734), we conclude that it is not appropriate to impose upon a payroll company a tort duty of care to an employee with respect to the obligations imposed by the applicable labor statutes and wage orders. Accordingly, we conclude that the Court of Appeal erred in determining that plaintiff's negligence cause of action could go forward.

## B. Negligent Misrepresentation Cause of Action

In addition to upholding plaintiff's negligence cause of action, the Court of Appeal held that the allegations of the 6AC are adequate to support plaintiff's proposed cause of action for negligent misrepresentation. We conclude that the Court of Appeal erred in this respect as well.

The numerous policy considerations that we have discussed above in concluding that it is not appropriate to impose on ADP a duty of care to support plaintiff's negligence cause of action are applicable as well to plaintiff's cause of action against ADP for negligent misrepresentation. Insofar as ADP's conduct in issuing to plaintiff inaccurate paychecks and pay stubs would otherwise support an action for negligent misrepresentation, any economic loss suffered by plaintiff can

be remedied in a statutory wage and hour cause of action against her employer, and recognition of a negligent misrepresentation cause of action against ADP is not needed to deter the alleged negligent conduct on the part of ADP because ADP already has a comparable incentive by virtue of its potential contractual liability to plaintiff's employer that would result from such negligence. Further, permitting plaintiff to pursue a negligent misrepresentation cause of action against ADP in this context would have the same potential distorting effect on ADP's performance of its contractual obligations to plaintiff's employer and would introduce an unnecessary and burdensome complication in virtually all wage and hour litigation.

To our knowledge, the only case that has indicated that a negligent misrepresentation cause of action may be permissible even though a negligence cause of action has been rejected because the relevant policy considerations weigh against the recognition of a duty of care is *Bily*, *supra*, 3 Cal.4th 370. In *Bily*, the court concluded, based upon a number of policy considerations, that "an auditor's liability for general negligence in the conduct of an audit of its client['s] financial statements is confined to the client, i.e., the person who contracts for or engages the audit services" and that the auditor owes no duty of care to third parties who may have relied on the audit report and thus such third parties may not maintain a negligence action against the auditor. (3 Cal.4th at p. 406.) At the same time, however, the court in *Bily* held that a narrow class of third party users of audit reports may sue the auditor for negligent misrepresentation so long as they "are specifically intended beneficiaries of the audit report who are

known to the auditor and for whose benefit it renders the audit report." (*Id.* at p. 407.)

In permitting a negligent misrepresentation action to be brought by persons who "are specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report" (*Bily*, *supra*, 3 Cal.4th at p. 407), the *Bily* decision clearly affords no support for plaintiff's proposed cause of action for negligent misrepresentation in the present case. As our discussion of plaintiff's third party beneficiary claim explains, ADP's contract with Altour was *not* entered into for the benefit of plaintiff or Altour's other employees and plaintiff was *not* an intended beneficiary of ADP's services. (*Ante*, pp. 22-30.) Thus, even under the narrow category of negligent misrepresentation claims authorized in *Bily*, plaintiff's negligent misrepresentation claim lacks merit.

Accordingly, we conclude that the Court of Appeal erred in permitting plaintiff's cause of action for negligent misrepresentation to go forward.

## IV. CONCLUSION

For the reasons set forth above, the judgment of the Court of Appeal is reversed insofar as it held that the trial court erred in dismissing the causes of action for breach of contract, negligence, and negligent misrepresentation without leave to amend. The matter is remanded to the Court of Appeal with directions to affirm the trial court judgment in favor of ADP in its entirety.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**IRION, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Goonewardene v. ADP, LLC

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 5 Cal.App.5th 154
**Rehearing Granted**

_____

**Opinion No.** S238941
**Date Filed:** February 7, 2019

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** William P. Barry

_____

**Counsel:**

Glen Broemer for Plaintiff and Appellant.

Morgan Lewis & Bockius, Robert A. Lewis, Thomas M. Peterson and Zachary S. Hill for Defendants and Respondents.

Kevin C. Young for Pay-Net, Payroll World, Inc., Erie Custom Computer Applications, Inc., Task HR-VA LLC, HCM Centric LLC, Adminasource, Inc., QTS Payroll Services, Inc., Promerio, Inc., and Payality, Inc., as Amici Curiae on behalf of Defendants and Respondents.

Dowling Aaron Incorporated and Stephanie Hamilton Borchers for Payroll People, Inc., The Payroll Group and Independent Payroll Providers Association as Amici Curiae on behalf of Defendants and Respondents.

Greines, Martin, Stein & Richland, Alana H. Rotter and Marc J. Poster for National Payroll Reporting Consortium and American Payroll Association as Amici Curiae on behalf of Defendants and Respondents.

Foley & Lardner, Eileen R. Ridley, Yesenia Garcia Peres and Anthony James Dutra for Paychex, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Glen Broemer
347 Union #2
Jersey City, NJ  07304
(805) 351-9857

Robert A. Lewis
Morgan Lewis & Bockius
One Market Street, Spear Tower
San Francisco, CA  94105
(415) 442-1000