[Civ. No. 30900. Second Dist., Div. One. Mar. 14, 1967.]

CHARLES B. NOVAK, Plaintiff and Respondent, v. CHARLES NOVAK et al., Defendants and Appellants.

Sull Lawrence for Defendants and Appellants.

Kates & Kates, Bruce M. Kaufman and Max Abrams for Plaintiff and Respondent.

FOURT, J.—Charles and Marie Novak appeal the judgment rendered by the court without a jury quieting title to certain real property in favor of respondent Charles B. Novak.

The facts, which are not in dispute, disclose that appellants, Charles and Marie, are the son and daughter-in-law, respectively, of Charles B. Novak, age 86, who will be referred to hereinafter as "the father." Prior to the subject transaction the father lived with Charles and Marie. On December 27, 1951, the father entered a contract to purchase for $6,500 a residence in Pacoima from one Barrett, then owner, on a land sale contract. He paid down approximately $1,000, moved in, and continued to make payments to Barrett until on March 2, 1952, he received notice from a bank in Van Nuys that Barrett was in default and that the bank had moved to foreclose the property.

The father, because of his age, was unable to refinance and prevent the foreclosure, so he turned to Charles and Marie. There was little time; they had in fact only one week within which to finance the property to prevent foreclosure. Charles agreed to and did obtain a loan. He and Marie purchased the property for $5,500 from Metropolitan Savings and Loan. The father executed a quitclaim deed to the property to Charles and Marie to enable them to complete the financing. This constituted, as to Charles and Marie, a purchase money mortgage, and did not render them personally liable for repayment, although Charles testified that it was his belief that it did.

Charles testified further that he and Marie believed that they owned the property. He and his father agreed that at the time the loan was arranged and the quitclaim deed given they had no conversation about the ownership of the property. The father had requested that Charles "vouch" for him to obtain a loan, and he retained faith and confidence in his son, assuming that upon full loan repayment his son would reconvey the title to him. Charles testified that he told his father that the house now belonged to Charles and Marie, but his father could reside there as long as he lived and if at any time he was unable to make payments, they would do so. The father, who understood that Charles and Marie would be obligated to make payments if he failed to do so, nonetheless clung to his belief that they held title for convenience only and to facilitate the financing for his benefit.

The father continued at all times up to the date of trial to reside on the premises. He made all payments on the trust deed, paid the taxes and insurance, and maintained and im-

proved the property. He built a concrete block wall, painted the dwelling and paid new sewer assessments. He thought that the title would revert to him upon repayment of the loan, but in the meantime he understood that in the event of his death Charles and Marie would take the property free of any claims upon his estate.

Although his son and daughter-in-law occasionally referred to the property as theirs, the father refrained from comment or action to refute this assertion during the term of the loan because he did not wish to risk the chance that he might be evicted or lose his substantial equity. When he felt that his health was deteriorating, he hastened to repay the loan as rapidly as possible. During 1964 he fully repaid the Metropolitan loan ahead of schedule and he then anticipated that Charles and Marie would reconvey the title to him. When they failed to do so, he brought this action to quiet title.

 Appellants Charles and Marie contend that the findings are not supported by the evidence, that the circumstances fail to justify the imposition of either a constructive or a resulting trust, and that the father's action is barred by the statute of limitations or laches. We find no merit in these contentions.

The trial court found that a confidential relationship existed between father and children, which imposed on the young couple a fiduciary obligation, and further found ''That for the purpose of effecting the required loan and for no other reason, and without any consideration, plaintiff conveyed his said interest in said property to defendants by deed on March 21, 1952; and therein by reason of the property being vested in defendants' names, plaintiff was able to obtain the required loan from Metropolitan Savings and Loan Association.'' Ultimately the court found ''That at the time said deed of March 21, 1952 was executed by Plaintiff, and at the time said loan was effected, it was understood between plaintiff and defendants that plaintiff would make the payments on the loan and pay all taxes and insurance, and that if plaintiff were still living at the time said loan was paid in full, the defendants. upon plaintiff's request, would reconvey the property back to plaintiff. That defendants accepted said deed to said property with, and subject to, said understanding.''

We conclude, therefore, that Charles and Marie held title to the property in trust for the benefit of Charles' father in the event he should fully perform the loan obligation. It

is a question of fact, in determining the existence of a trust, whether the evidence is clear, satisfactory and convincing, and the appellate court is not entitled to reweigh conflicts in the evidence which were properly resolved by the trial court. (*Stromerson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732].)

Certainly it is convincing evidence that prior to the transaction involving appellants, the father had arranged to purchase the home with financing directly from the former owner and that he had made a substantial payment before the foreclosure. Thereafter he continued to maintain the property and made the loan payments on the theory that only in the event he died or was so incapacitated that he was unable to perform before full repayment would Charles and Marie take clear title. This condition precedent to the vesting of title failed to occur and appellants thus continued to hold title in trust for the father's benefit. (*Hall* v. *Citizens Nat. Trust & Sav. Bank*, 53 Cal.App.2d 625 [128 P.2d 545].) He, having fully performed, is presently entitled to reconveyance.

The result may be supported on the theory of either a resulting or a constructive trust. Although a resulting trust generally arises in favor of the payor of the purchase price when one pays and another takes title, the payor may be the trustee rather than the holder of the beneficial interest where his payment constituted a loan to the beneficiary. (*Viner* v. *Untrecht*, 26 Cal.2d 261, 269-271 [158 P.2d 3].) Nor is the existence of such a trust prevented because the transferee of title assumes an obligation to pay. (*Stromerson* v. *Averill*, *supra*, 22 Cal.2d 808.)

Finally, the individual claiming a beneficial interest in the property need not have made an express promise to repay the loan; his promise may be implied from the circumstances in which event the trustee of the resulting trust holds legal title merely as security for the repayment of the loan. (*Viner* v. *Untrecht*, *supra*, 270.)

The evidence compels the conclusion that in this instance Charles and Marie were trustees of the legal title for Charles' father. They held bare legal title; they never asserted the right nor were given possession of the dwelling, nor did they reside there. The father's promise to make the installment payment is necessarily implied from the nature of the transaction and the conduct of the parties thereafter. Once the loan was repaid, the father made no rental payments to Charles and Marie, but at all times he conducted himself in a manner consistent with belief in his ownership.

Having thus resolved the conflicts in the evidence, the trial court was not required to go further to determine the nature and extent of the advantage appellants might have taken of their fiduciary relationship with the father. Nor are we compelled to examine the evidence in greater detail to determine the existence of fraud on the part of Charles and Marie. They held legal title as trustees pending repayment of the loan by the father. This condition having been met by him, they are obligated to reconvey the title. It is not essential, as contended by appellants, that the claimant of the beneficial interest have made payment of money contemporaneously with the transfer of legal title to the trustee but ''the transaction is simply the case of one person paying the consideration and another taking title, the most elementary and simplest type of a resulting trust.'' (*Stone* v. *Lobsien*, 112 Cal.App.2d 750, 756 [247 P.2d 357].)

The father's action to quiet title in his favor was barred neither by the statute of limitations nor laches. He continued in good faith to make loan payments until the loan was repaid in 1964, and the court found from the evidence that the trust was only then repudiated by the trustees so that this action commenced on March 31, 1964, was within the statute of limitations (Code Civ. Proc., § 338, subd. 4).

Appellants raise the issue of laches tardily and for the first time on appeal; they fail to show prejudice and thus come too late with too little. (*Danziger* v. *Peebler*, 88 Cal. App.2d 307 [198 P.2d 719]; *Newport* v. *Hatton*, 195 Cal. 132 [231 P. 987].)

The judgment is affirmed.

Wood, P.J., and Lillie, J., concurred.