Filed 7/27/22  Brown v. Brown CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LACHEY BROWN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JESSICA MARIE BROWN,<br><br>Defendant and Respondent. | B314955<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV28753) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

George M. Halimi for Plaintiff and Appellant.

Jessica Marie Brown, in pro. per., for Defendant and Respondent.

————————————

Appellant Lachey Brown sued her sister Jessica Brown for quiet title, imposition of constructive trust, declaratory relief, and partition. The subject of the action was real property located at 958 W. 60th Street in Los Angeles (property). In 2010, their father, Willie Brown, executed a grant deed transferring title to the property to Jessica.[1] After Willie's death in 2019, Lachey filed this action, alleging that Willie's transfer to Jessica created a trust for his benefit during his lifetime, and that he instructed Jessica to transfer a 50 percent interest in the property to Lachey upon his death. Jessica denied the allegations and moved for summary judgment. Lachey contends the trial court erred in granting the motion because there were disputed issues of material fact about Willie's intent. We affirm.

## BACKGROUND

In 2006, Willie inherited the property; title was in his name alone. In 2010, when he signed the grant deed transferring title to Jessica, Willie lived in the front house on the property with his wife Lanarwee Spellman and their then 11-year-old daughter Lachey. There was a back house on the property rented to a tenant. Jessica was an adult at the time, had a different mother, and did not live on the property.

It was undisputed that Willie transferred title to the house to Jessica to become eligible for social security disability benefits. At the same time, he transferred a different property at 947 W. 60th Street to Spellman for her and for Lachey, who was a minor.

---

[1] Because Jessica Brown, Lachey Brown and Willie Brown share the same last name, we refer to them by their first names for clarity.

2

Willie, Spellman and their daughter Lachey continued to live in the front house on the property until Willie died on February 11, 2019.  In the period between the 2010 property transfer and his death, Willie paid the taxes, insurance and upkeep on the property, and collected the rent from the back house.

Following Willie's death, Jessica moved into the back house on the property.  Lachey then brought this action.  Jessica denied that a trust was created, or that Willie instructed her to transfer any interest in the property to Lachey.  Jessica moved for summary judgment, which the trial court granted.  Although the trial court held a hearing on the motion, Lachey has not provided a reporter's transcript of that hearing.

In a detailed written ruling, the trial court found Jessica relied on the grant deed executed by Willie, "which was not contested, deeding the entire ownership interest on its face to her as the 100% owner in fee of title to the land in issue."  Jessica also submitted a declaration that stated when her father gave her the property in June 2010, "there was 'no mention of any intent to share.'  He also said to her at the time of transfer that the house was for her, and never said that she had to 'share or give anything to anyone.' "  According to Jessica, Willie died without a will.

In its ruling, the trial court explained it granted Jessica's motion because Lachey failed to offer competent admissible evidence that Willie intended for 50 percent of the property to be transferred to Lachey.  The court explained that Lachey's and Spellman's declarations filed in opposition to summary judgment were "almost 100% hearsay or merely statements of conclusion or opinion, without foundation, outside the affiant's personal

3

knowledge and not statements of fact." The court noted that at oral argument, "in an attempt to find out if there were additional facts available that plaintiff could proffer through an offer of proof that might cure some of the deficiencies and gaps in the way the Declaration had been presented," the court explained that the statement that Willie's "intent" was "revealed" was too "amorphous" and "ambiguous" to constitute the specific statement of fact needed to withstand summary judgment. The court "asked what is meant, for example, what does revealed mean? By letter, orally, by a will or testamentary document, at a meeting, etc.? Or, in other words, did [Willie] say this? And, if so, when and where and at what time and who was present, etc.? The response from plaintiff's counsel was that it is not really known to whom such statements may have been made or the specifics of when and where, etc., and that this statement about 'tentent' [*sic*] having been 'revealed' was meant to refer only to that it was common knowledge in the family generally speaking that this was what he wanted presumably based on things that family members had heard over the years."

The court explained "without the most important factual element established or demonstrated even by a scintilla of competent admissible evidence, none of [the] cases cited [by plaintiff] apply."

## DISCUSSION

A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A moving defendant is entitled to judgment as a matter of law when the defendant shows without rebuttal that one or more elements of

4

the plaintiff's case cannot be established or there is a complete defense to that cause of action. (*Id.*, subds. (a), (o); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356.)

"On appeal after a summary judgment has been granted, we review de novo the trial court's decision to grant summary judgment and are not bound by the trial court's stated reasons. [Citations.] In reviewing the summary judgment, we apply the same three-step analysis used by the trial court: we (1) identify the issues framed by the pleadings; (2) determine whether the moving party has negated the opponent's claims; and (3) determine whether the opposition has demonstrated the existence of a triable, material factual issue. [Citation.] Like the trial court, we view the evidence in the light most favorable to the opposing party and accept all inferences reasonably drawn therefrom." (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.)

A plaintiff opposing a motion for summary judgment cannot defeat that motion by relying on "assertions that are 'conclusionary, argumentative or based on conjecture and speculation,' but rather [is] required to 'make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact . . . .' " (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1404.) A proper declaration must be based on personal knowledge and "must cite evidentiary facts, not legal conclusions or 'ultimate' facts." (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 639.) "Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or

5

impermissible opinions, must be disregarded in supporting affidavits." (*Ibid.*)

Lachey contends the trial court erred in granting summary judgment because there were triable issues of material fact about 1) whether Willie created a trust for his lifetime; and 2) whether he created a trust granting a 50 percent interest in the property to Lachey upon his death. Lachey acknowledges it is undisputed there is no written instrument creating a trust, but contends there is a triable issue of fact as to whether the transfer created a resulting trust.

"A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties." (*Lloyds Bank California v. Wells Fargo Bank* (1986) 187 Cal.App.3d 1038, 1042 (*Lloyds Bank*).)

Lachey first contends Jessica failed to submit evidence showing her father's intent in transferring title to her, and so did not meet her burden of proof for summary judgment. She is mistaken.

Jessica offered the grant deed as evidence. It is undisputed that Willie executed that deed, which on its face deeds the entire ownership interest to Jessica as 100 percent owner of the property. The deed alone is evidence of Willie's intent. Because Jessica is Willie's child, there is also a rebuttable presumption that the deed was "a gift or advancement." (*Lloyds Bank, supra*, 187 Cal.App.3d at p. 1043; see *Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 642 [defendant moving for summary judgment is entitled to the benefit of any relevant presumptions; a presumption affecting the burden of producing

evidence operates to shift the burden on summary judgment to the opposing party to show there are triable issues of fact].)

In addition, Jessica submitted a declaration stating that at the time of the transfer, Willie "told me that the house was for me, he never said that I had to share or give anything to anyone." This is solid evidence that Willie gave the property to Jessica in its entirety and with immediate effect.

We cannot agree with Lachey that it is reasonable to interpret Willie's statement as meaning that Jessica would become the owner of the property only upon Willie's death. This interpretation is literally the opposite of what the statement means. To break it down, that Willie did not say that Jessica had to share the house with "anyone" necessarily includes Willie himself. Put differently, Willie did not tell Jessica she had to "share" the property with him while he was alive. The fact that Willie did not tell Jessica she had to "give anything to anyone" means Willie intended it to be hers alone.

Further evidence that Willie intended the property to be Jessica's alone is found in Willie's conveyance of a different parcel of real estate (947 W. 60th St.) to Lachey's mother for her and Lachey's benefit at the same time he conveyed the property to Jessica. These separate, contemporaneous gifts to each of his children belie the idea that Willie made a mistake or intended to effectively disinherit Jessica in favor of Spellman and her daughter Lachey.

Lachey next contends that any evidence produced by Jessica about her ownership of the property was contradicted by the "fact that Jessica was not in possession of the [p]roperty" until her father died, and she did not pay taxes, insurance, or maintenance on the property, or have control over renting the

7

back house on the property while Willie was alive. We note there is no admissible evidence in the record that Jessica had no control over the property and so it is not a fact that Jessica had no control over renting the back house.[2] We also note there is no evidence about the specific arrangement by which Willie remained in the house. On the record before us, Jessica could have agreed that Willie would pay taxes, insurance and maintenance in lieu of paying rent to her, or Jessica could have decided to allow him to stay rent-free once the serious nature of his ill health was confirmed by his qualification for disability benefits. It is even possible Jessica asked Willie to move out of the house but he refused and she decided to forbear eviction to preserve family harmony. Without evidence of how and why Willie stayed in the property, it would be speculative to conclude that Willie's actions show an intent not to transfer title fully and unconditionally to Jessica. It was Lachey's burden to produce evidence sufficient to permit a reasonable inference that the circumstances of Willie's continued residence on the property showed a lack of intent to fully and unconditionally transfer the property to Jessica. Lachey did not meet that burden.

---

[2]    In opposition to the summary judgment motion, Lachey disputed Jessica's statement that there was no evidence of the terms of the alleged trust. In this regard, she proposed as an additional statement of fact that Jessica "never had any control or possession of the [p]roperty" and cited paragraph 14 in her own and Spellman's declaration. The trial court, however, found these statements about a lack of control to be inadmissible conclusions.

8

Lachey relies on *Novak v. Novak* (1967) 249 Cal.App.2d 438 (*Novak*) and *Henneberry v. Henneberry* (1958) 164 Cal.App.2d 125 (*Henneberry*) to show that the circumstances of Willie's continued presence on the property and his payment of taxes, insurance and maintenance costs is sufficient evidence of Willie's intent not to transfer to Jessica immediately and unconditionally, hence creating a disputed issue about whether a resulting trust was created. Lachey did not rely on *Novak* or *Henneberry* in the trial court, and her reliance on those cases now is misplaced.

In *Novak*, the father, the transferor of the deed, was alive when a dispute arose between him and his son and daughter-in-law, the transferees. The father claimed he did not intend to transfer the property to the children unconditionally; the transfer was for the purpose of obtaining a loan that was in in effect a mortgage on the property and was necessary to avoid foreclosure.[3] (*Novak*, <u>*supra,*</u> 249 Cal.App.2d at p. 440.) According

---

[3] The circumstances necessitating the loan were somewhat complicated. The father had entered into a contract with property owner Barrett to purchase the property for $6,500 and he made a down payment of $1,000. The father then made payments to Barrett. Barrett defaulted on a bank loan, and the bank indicated it planned to foreclose on the property. *Novak*, <u>*supra,*</u> 249 Cal.App.2d at p. 440.) The father was unable to obtain financing to prevent the foreclosure. His son and daughter-in-law were able to obtain a $5,500 loan from another financial institution to purchase the property from the bank, and the father executed a quitclaim deed in favor of the couple to facilitate the transaction. (*Ibid.*) The father testified that all three agreed that if he repaid the loan obtained by the couple, they would transfer the property back to him. (*Ibid.*) He in fact paid off the loan in full, but his son and daughter-in-law refused to transfer the property back to him. (*Id.* at p. 441.)

9

to the father, all three agreed the property would be reconveyed to the father once the loan was repaid. The son testified he told his father after the transfer that the house was now owned by the son and daughter-in-law, but the father could live in the house for the rest of his life. (*Ibid.*) Thus, the trial court had direct but conflicting evidence about whether the father intended to convey full and unconditional title to his son and daughter-in-law. The fact that the father continued to live on the property, to pay taxes and insurance and to make improvements to the property was evidence which corroborated his disputed intent, but nothing in the *Novak* opinion suggests continued residence and payment of taxes and upkeep alone would be sufficient to show the father's intent. These circumstances were not even the only relevant evidence of the father's behavior. For example, as the court pointed out, "Certainly it is convincing evidence that prior to the transaction involving [the children], the father had arranged to purchase the home with financing directly from the former owner and that he had made a substantial payment before the foreclosure." (*Id.* at p. 442.)

*Henneberry* involves a similar evidentiary situation. In that case, in the interval between his execution of the grant deed and his death, Thomas, the transferor, continued to verbally and expressly assert that he was the owner of the property, and no one would take it from him while he was alive. *Henneberry, supra,* 164 Cal.App.2d at p. 130.) Joseph, the transferee agreed, stating he did not consider the property his until Thomas died, and Joseph did not in fact record the deed until that death occurred. (*Ibid.*) Again, the transferor's continued residence in the property, and payment of taxes and insurance was evidence which corroborated the transferor's expressed intent. There is,

10

again, nothing in the *Henneberry* opinion to suggest that such continued residence and payment of expenses alone were sufficient to show a particular intent.  (*Id*. at pp. 129–130 [discussing the sufficiency of the totality of the evidence].)

Unlike *Novak* and *Henneberry*, there is no admissible evidence of Willie's intent to benefit Lachey.  In the face of Jessica's declaration, Willie's grant deed in favor of Jessica, and Willie's contemporaneous transfer of other real estate to Lachey's mother for her and Lachey's benefit, and without more than Willie's unexplained continuous residence at the property and his payment of taxes, insurance, and maintenance, Lachey has failed to meet her burden of establishing a triable issue of material fact.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, Acting P. J.

We concur:

WILEY, J.             HARUTUNIAN, J.*

---

*	Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.